## W. A. AARON v. H. S. BROILES ET AL.

### (Case No. 5356.)

1. CITIES AND TOWNS — CITY ORDINANCE.— The right of a city council, acting under legislative authority, to enact and enforce an ordinance providing for the removal from the city limits of persons afflicted with contagious diseases, is not to be questioned. If the continuance of such persons in the city is incompatible with the safety of the inhabitants, the city authorities can remove them, but in doing so, the city, and those to whom she intrusts this duty, are bound to make every reasonable provision for the safety of the diseased persons.

2. NEGLIGENCE — EXEMPLARY DAMAGES — R. S., ARTS. 2899 AND 2901.— The statutes provide that actual damages for injuries causing death may be recovered when death was caused by the wrongful act, negligence, unskilfulness or default of another, and that when it is caused by the wilful act or omission or gross negligence of the defendant, exemplary damages also can be recovered. If city authorities cause the removal of a person afflicted with a contagious disease, and in doing so fail to exercise the care and precaution the circumstances demand, and death results, they are responsible, even though acting under a city ordinance.

3. JUDICIAL ACT.— There is nothing judicial in the act of removing diseased persons from the city limits, and the question is, whether there was a wrong done in the manner of effecting the removal.

4. DAMAGES — CHARGE OF COURT.— Where the evidence tended to show that inferior tents and poor accommodations were provided by the board of health for small-pox patients, removed from the city limits, and there was no evidence to show that they constituted the city pest-house, it was error to charge the jury that it was the duty of the city to provide pest-houses and all comforts for patients so removed, and that the members of the board of health and those who removed the persons were not liable for injuries suffered by patients after they had been placed in the tents.

APPEAL from Tarrant. Tried below before the Hon. M. D. Priest, Special Judge.

This suit was brought (on April 13, 1883) by appellant against appellees, H. S. Broiles, Max Elser, N. C. Brooks, J. P. Smith and S. M. Farmer.

The first three defendants were members of the board of aldermen, and constituted the board of health of the city of Fort Worth; Smith was the mayor, and Farmer the marshal of the city.

The plaintiff alleged that on May 4, 1882, at his home in the city of Fort Worth, his little son, a boy of about four years old, was attacked with small-pox, and was being nursed by his mother; that the defendants took the mother and child by force, and conveyed them to a place in the country, exposed them to the rain and cold, and thus caused the death of both of them.

The defendants demurred generally and specially, pleaded general denial, and that in removing plaintiff's wife and child from the city they were acting under the ordinances of the city, enacted for the purpose of protecting the people from contagious diseases, etc.

A trial was had on December 17, 1874; verdict and judgment for the defendants.

The plaintiff claimed $10,250 actual damages and $10,000 exemplary damages.

It appears from the evidence that the plaintiff and his wife and child had a good, comfortable house. The child had small-pox,—the disease being in an advanced stage.

When the marshal (defendant Farmer) went to the house to remove the mother and child, he was earnestly entreated that they should not be taken out in such bad weather. The marshal returned to the defendants, Broiles, Elser and Brooks, who, with the mayor, Smith, gave him a written order, and required him to remove them that day. They were removed at 11 o'clock that night. It was cold, raining and sleeting. They were taken in an open, uncovered wagon over a mile into the country. Three armed policemen went with the marshal to the house.

The mother and child were put into a tent of thin ducking that had no fly or guys. The rain beat through it and under it. Two or three days after they were put into the tent a violent storm came up, when the rain and hail beat through and into the tent, wetting the mother and child and everything in the tent. There was no stove or fire. Very soon afterwards the child grew worse and died. In about ten days the mother died also of the same disease.

It further appeared that, soon after the rain and hail storm spoken of above, the defendant Broiles ordered a fly for the tent and also a stove. The fly was obtained, but not the stove.

*W. G. Horsley* and *R. J. Boykin*, for appellant, cited: R. S., arts. 2899 and 2901; Aull *v.* Lexington, 18 Mo., 401; Freud *v.* Dennett, 4 C. B. (N. S.), 576; Barton *v.* New Orleans, 16 La. An., 317; Belcher *v.* Farrar, 8 Allen, 325; Hazen *v.* Strong, 2 Vt., 427; Dillon, Munic. Corp., p. 407, n.; Amy *v.* Supervisors, 11 Wall., 136; Now-

ell *v.* Wright, 3 Allen, 166; Story, Agency (3d ed.), § 320; Thompson, Negligence (2d vol.), 823; Dillon, Munic. Corp., p. 299, n; p. 884, § 772; p. 936, n.

No briefs on file for appellees.

DELANY, J. COM. APP.— In our opinion there is no merit in the first and second assignments of error. The right of the city council of Fort Worth, acting under legislative authority, to enact and to enforce the ordinance which was introduced in evidence, is not to be questioned. R. S., art. 468; Cooley's Const. Lim., 4th ed., p. 729, art. 2; Dill., Mun. Corp., sec. 95.

If the continuance of Mrs. Aaron and her child in the city was incompatible with the safety of the people of the city, we have no doubt that the city authorities might remove them. But we have as little doubt that the city, and those to whom she intrusted this important duty, were bound to make every reasonable provision for the safety of those unfortunate persons.

We think, therefore, that there is error in the charge of the court. In the first place, the jury were told that, in order to a recovery, the removal must have been not only wrongful, but without authority of law. Now, in our opinion, it might have been entirely lawful and right to remove the mother and child, and yet the thing may have been done in such a way as to inflict upon them the greatest possible injury.

In the next place, the jury are told that if those who removed the mother and child were acting under the authority of law, then, in order to find against them, they must have acted maliciously, wilfully and oppressively, or with gross negligence. This, we think, was error.

The bailee of the most common property is, under some circumstances, required to use the highest degree of care. If the defendants had taken possession of the plaintiff's mule or horse, to be used for the benefit of the city, the law would have exacted of them the highest degree of care. 1 Wait's Act. and Def., p. 497. Can it be that when, for the benefit of a city, its officers take possession of a man's wife and child, the law will say to the custodians, "You must not bear malice toward the sufferers, but all that is required of you is that you shall not be guilty of gross negligence?" We think not. It is true the court charges that if there was malice or gross negligence, the jury might award examplary damages; but the drift of the charge seems to be that unless there was malice, oppression

or gross negligence, there could be no finding at all against the defendants.

The statute provides that "an action for actual damages on account of injuries causing the death of any person may be brought in the following cases:   .   .   .   2d. When the death of any person is caused by the wrongful act, negligence, unskilfulness or default of another."   R. S., art. 2899.   Art. 2901 provides that, "when the death is caused by the wilful act, or omission, or gross negligence, of the defendant, exemplary as well as actual damages may be recovered."

If the defendants caused the removal of the plaintiff's wife and child without the care and precaution which the circumstances required, and if the deaths resulted therefrom, then, in our opinion, they are responsible; and the fact that they were city officers, and acting under a city ordinance, does not shield them.   2 Thompson, Neg., 823; Story on Agency, sec. 320, and cases cited; Nowell v. Wright, 3 Allen, 166.   We are also of opinion that the charge given at the request of the defendants was erroneous.   The jury were told that the board of health, while acting under the city ordinances in devising plans to protect the city against disease, were acting in a judicial capacity, and were not responsible for errors and mistakes of judgment.   There was nothing judicial in the act of moving this woman and child, and the question is not whether the policy was wise or unwise, but whether there was a wrong done in one of the details of its execution.

In another part of the same charge the jury were told that "it was the duty of the city to provide a pest-house, employ physicians, nurses, and make all necessary arrangements for the treatment, protection and comfort of the patients in the pest-house or tents under their control; and that the defendants would not be liable for any injury resulting to plaintiff's wife and child from the want of care of the same after they reached the hospital or tent."

The evidence is somewhat indefinite, but from it we infer that the board of health, or some of its members, provided the tent in which the woman and child were placed.

Nor does it clearly appear whether the tent was the pest-house or not.   It is thus described by the attending physician: "An eight-ounce tent of thin ducking, and the rain beat through it and in it on the sides, and the wind blew in under it.   It had no fly or guys. It had no stove or fire of any sort in it.   .   .   .   Three or four days after the parties were taken to the tent there came up a rain and severe hail storm.   The wind beat through and under the tent, and

wet the bedclothing, the child and the mother, and everything in the tent. Plaintiff and his wife used every means and effort to keep the child dry, but could not do so. The storm was in the night, and it turned much colder just afterwards. Immediately afterwards the child grew worse and died." The next witness states that a large majority of the small-pox patients sent to the pest-house died, and that all the confluent cases died with perhaps one exception.

One of the defendants, who seems to have had charge of the place, or places, where patients were kept, testifies that "after the rain and hail storm, he ordered a fly to be added to the tent in which Aaron's wife and child were staying; that he also ordered a stove to be put there. The fly was put to the tent, but he never saw any stove there." He considered the tent "a pretty fair tent, and that a good tent was better for small-pox than a bad house." In our opinion the charge was not applicable to the evidence. Without further comment on the case, we recommend that the judgment be reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion adopted June 5, 1885.]