THOMAS MANNING *vs.* CHARLES BRUCE & others.

Middlesex.     May 19, 1904. — June 24, 1904.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Everett.    Eminent Domain.    Constitutional Law.    Municipal Corporations. Nuisance.    Evidence,* Presumptions and burden of proof.

The taking by the city of Everett under St. 1902, c. 465, of certain land in that city for a hospital for the treatment of contagious diseases is valid.

When land is taken under statutory authority, if the owner chooses to waive irregularities in the taking and accepts payment in damages, the taking becomes good as to him; and *semble* that no one else can take advantage of the irregularities.

St. 1902, c. 465, authorizing the city of Everett to take land for a hospital for the treatment of contagious diseases, is constitutional.

A statute authorizing a city to take land for a hospital for the treatment of contagious diseases, although an exercise of the right of eminent domain so far as it affects the owner of the land taken, is in its general purpose an exercise of the police power for the protection of the public health.

In this Commonwealth a city has authority without special legislation to erect a hospital for the treatment of contagious diseases on land purchased for the purpose.

A hospital erected by a city for the treatment of contagious diseases is by R. L. c. 75, § 40, under the supervision of the board of health, and in the absence of proof will not be presumed to be a nuisance public or private.

BILL IN EQUITY, filed August 28, 1902, by an owner of land and a dwelling house in Everett against the mayor and the members of the board of health of that city, to restrain them from erecting and maintaining a hospital on land adjoining that of the plaintiff for the care of persons suffering from smallpox and other contagious diseases.

In the Superior Court *Hardy,* J. made a decree dismissing the bill with costs; and the plaintiff appealed.

*F. P. Curran,* for the plaintiff.

*W. S. Thompson,* for the defendants.

HAMMOND, J. 1. The defendants rely upon St. 1902, c. 465, for their justification. The first contention of the plaintiff is that the alleged taking of the land for a hospital is invalid because the provisions of the statute were not complied with in that the taking was by the mayor and not by the city. The statute (§ 1) provided that "the city of Everett by its city council may take any lands within the limits of said city" for the erection of a hospital for the care of persons suffering from contagious diseases, and that (§ 2) "within sixty days after the taking of any land . . . the city council shall cause to be recorded in the registry of deeds . . . a description thereof sufficiently accurate for identification, with a statement of the purpose for which the same was taken, which statement shall be signed by the mayor of the city"; and thereupon the fee in the land vests in the city. The vote of the city council, approved July 22, 1902, after reciting the fact that by this statute the city had been authorized to take land for the purposes therein named, ordered that "the mayor be and he is hereby authorized and instructed for and in behalf of the city

of Everett by virtue of said act of the Legislature to take" for the purposes therein named, certain land now or formerly of one Bradley, which in the order is minutely described by metes and bounds. Another order passed at the same time authorizes the mayor "to cause any buildings on estate of Bradley taken by the city of Everett for hospital purposes to be vacated within six days from the date of the approval of the order taking said land by the mayor." The last three words in the order manifestly refer to the word "approval" and not to the word "taking" as though the clause read "approval by the mayor of the order taking said land." We do not find in the record any copy of the statement which was signed by the mayor and seasonably filed in the registry, but there is a copy in the brief of the defendants, and, as we do not understand that its accuracy is questioned, we assume it to be correct.

This statement, after reciting that by virtue of the St. of 1902, c. 465, "and by an order passed by its city council and approved by its mayor July 22, 1902," (which is the order first above mentioned) the city of Everett "did duly take the lands . . . hereinafter described," for hospital purposes, proceeds as follows: "Now therefore, the said city of Everett, by and through its mayor, . . . does . . . hereby file . . . the following description of the lands so taken." Then follows an accurate description of the land named in the order of the city council. The statement is signed "Chas. Bruce, Mayor of Everett," and to it is affixed the city seal.

From an inspection of these papers it is clear that, while the order of the city council is not in the best form, nothing was left to the discretion of the mayor; that the taking was made by the order of the city council, and that the duty of the mayor which he was instructed to perform was to sign and file, in behalf of the city, the statement required by the second section of the statute. The taking was in compliance with the statute. We have passed upon the question of its validity, although it is difficult to see how any one except the person whose land was taken can take advantage of any irregularities. If the landowner chooses to waive the irregularities in the taking and to accept payment of the damages, it is a good taking certainly as to him.

2. Nor is the statute unconstitutional. While, so far as it affects the owner of property taken, it is an act in the exercise of the right of eminent domain, it is nevertheless in the object ultimately to be reached an act in the interest of the public health, and, so far as it confers the right to erect and maintain upon the land taken a hospital for contagious diseases, it finds its sanction in the general police power, subject to the proper exercise of which all property is held. It is not necessary to discuss the right to deal with contagious diseases. Even the right of personal liberty must yield to the measures necessary for the protection of the general public. A man afflicted with the smallpox, or any other contagious disease dangerous to public health, has for the time being lost his right of personal freedom, and may be compelled to yield to restraint carried, if necessary, even to compulsory isolation. Hospitals must be established and maintained for such persons, and for more than a century cities and towns have been authorized by statute to do this; and, in case of the breaking out of a contagious disease dangerous to the public health, it is made the duty of the proper public officer to provide a hospital or place of reception. St. 1792, c. 58, §§ 2, 5. Rev. Sts. c. 21, §§ 35–40. Gen. Sts. c. 26, §§ 40–44. Pub. Sts. c. 80, §§ 70–75. R. L. c. 75, §§ 35–42. Such laws being necessary for the protection of the public health, are wholesome and reasonable within the meaning of the phrase as used in the Constitution, and they violate no constitutional provision. See *Sawyer* v. *Davis*, 136 Mass. 239, and cases there cited, for discussion of the subject. Under the general law the city could have erected such a hospital, but it was limited to such land as it could buy, and no doubt this statute was passed not so much to grant authority to build and maintain a hospital as to enable the city to obtain a site for it by the exercise of the right of eminent domain. Such a hospital is under the supervision of the board of health, (R. L. c. 75, § 40,) and it is not to be assumed in advance that it will be a nuisance, public or private. The findings of the master do not show any ground for interference with its erection.

*Decree affirmed.*