Joseph W. Barry *vs.* Nathan B. Smith & others.

Middlesex. November 21, 1905. — March 3, 1906.

Present: Knowlton, C. J., Morton, Hammond, Loring, & Sheldon, JJ.

*Board of Health. Evidence. Municipal Corporations. Trespass. Nuisance. Smallpox Hospital. Words,* "Town."

Where the defendants in an action of tort set up in defence that they were members of the board of health of a certain city and did the acts complained of in their official capacity as members of that board, whether the testimony of the defendants that they were members of that board is sufficient, in the absence of evidence that they had acted as such officers, to warrant a finding that they actually held the offices by legal appointment, *quære.*

Where the board of health of a city have established a smallpox hospital on land hired for the purpose, they have no right to enclose with a rope the driveway belonging to an adjoining proprietor and to exclude him and his tenants from it without his consent and without action under R. L. c. 75, § 46, and if this is done by them or by persons in their presence and under their direction, they are liable to the proprietor for the damage suffered by him from this cause.

The board of health of a city in fixing the location of a smallpox hospital are exercising a discretion required of them as public officers by R. L. c. 75, § 42, and are not liable for negligence in exercising it, and in an action against them by the owner of land adjoining such a hospital for injury to his land caused by its establishment, it is right to exclude evidence offered by the plaintiff to show that the defendants were negligent and careless in locating the hospital.

If the board of health of a city, having established a smallpox hospital in performance of the duty imposed on them by R. L. c. 75, § 42, maintain the hospital in a negligent and careless manner, they are liable to one injured by their acts if they have been personally guilty of misfeasance and the hospital has in consequence become a nuisance, but they are not liable for mere nonfeasance. In an action for such a cause an offer by the plaintiff to prove that the defendants maintained the hospital in a negligent and careless manner and that their carelessness made the hospital a nuisance to the plaintiff does not go far enough

to charge the defendants with liability, and evidence thus offered should be excluded.

The provision of R. L. c. 75, § 42, that "if a disease which is dangerous to the public health breaks out in a town," the board of health shall immediately provide a hospital or place of reception, applies to cities as well as towns. See R. L. c. 8, § 5, cl. 23.

The owner of a dwelling house in a city whose board of health has established a smallpox hospital under R. L. c. 75, § 42, is not injured if the board of health in doing so has violated R. L. c. 75, § 37, by establishing the hospital within one hundred rods of inhabited dwelling houses in an adjoining town or city without its consent.

THE following statement of the case is taken from the opinion of the court:

This was an action of tort containing three counts. The first two were for trespass *quare clausum fregit.* The first count alleged that the plaintiff was the owner of a close situated at 99 Tremont Street in the city of Everett, and that the defendants forcibly entered on the same about the middle of January, 1902, and "wrongfully and unlawfully roped off the approach to said premises, and used a portion of said premises in connection with the premises adjoining thereto, as a yard for a smallpox hospital, and used the said premises for said purpose from day to day thereafter for a long period of time." The second count alleged that the plaintiff owned two lots in Everett, one on the corner of Tremont Street and Everett Street, and one on Everett Street, and "that on or about the 27th day of January, 1902, the defendants unlawfully and without the consent of the plaintiff, took possession of said lots of land and the buildings thereon, and thereafter occupied said premises of the plaintiff in connection with a certain smallpox hospital established by the defendants." The third count alleged the ownership of the two lots of land mentioned in the second count, and of a third lot on Tremont Street, on which were buildings containing a store and apartments let to tenants at will and one occupied by himself; and "that on or about the 27th day of January, 1902, the defendants negligently and carelessly and unlawfully established a smallpox hospital on the premises adjoining the plaintiff's lots aforesaid on Everett Street and on the corner of Tremont and Everett Streets, and in the immediate vicinity of the plaintiff's house on Tremont Street, and there negligently and carelessly and unlawfully maintained said smallpox hospital for a long

period of time "; and that " said hospital by reason of its location and maintenance as aforesaid was a serious nuisance, and a great damage to the plaintiff's property aforesaid, and said hospital was established and maintained by the defendants against the protest of the plaintiff; that in consequence of the careless and negligent and unlawful location and maintenance of said hospital the plaintiff's said store and apartments were vacated by the tenants occupying same at the time said hospital was established, and the plaintiff was unable by reason of such location and maintenance of said hospital to rent said store and apartments for a long period of time; that by reason of the idleness of said store and apartments occasioned as aforesaid the plaintiff has been put to great expense for repairs; that since the establishment of said hospital, and in consequence thereof, the streets in the immediate vicinity of the plaintiff's premises have been but little used by the public generally, and the rental value of the plaintiff's said store has been greatly depreciated; that since the establishment of said hospital, and by reason thereof, the rental value of the said apartments have also been greatly depreciated in value."

The defendants' answer set up a general denial, and the special defence that they were members of the board of health of the city of Everett, and on November 22 occupied certain premises adjacent to the plaintiff's, for a contagious hospital, and on December 1, 1901, took a lease thereof from the owner of it, and that in all that they did they were acting in their official capacity as members of the board of health of that city, and that they are not liable.

At the trial it appeared that the plaintiff owned a building on the corner of Tremont Street and Everett Street, and another farther down Everett Street. Next to the house on the corner was a house fronting on Tremont Street, and distant sixteen and a half feet therefrom, which ran along on the back of the plaintiff's Everett Street house and distant nineteen feet from that house. In this adjoining house a case of smallpox broke out in November, 1901, and was treated there. On or about January 10, 1902, the patient had been discharged and the quarantine of the house discontinued. The plaintiff suffered no damage from the treatment of this case.

Afterwards, on January 27, 1902, the defendants brought to this house a patient who had fallen ill with smallpox in another part of the city, and from then until some time in September the defendants brought about fifty other smallpox patients and treated them there. One of the defendants told the plaintiff on the day that the first patient was brought there, "that it was a waste of time to make any protest about the matter, as they had decided to use the house as a hospital."

Before the establishment of the hospital the land of the plaintiff (between his house on the corner and the boundary line between his land and that on which the building used as a hospital was situated) had been used as a passageway to the back entrance of the plaintiff's house on the corner and of his house beyond on Everett Street. There was no fence between the plaintiff's land and the land leased by the defendants but the boundary line was marked by a division post. Ambulances carrying patients to the hospital and taking bodies from it passed over the plaintiff's premises to and from a door on the side of the hospital facing the plaintiff's corner house. There also was evidence that "Nurses employed at the hospital used the plaintiff's land for recreation purposes, and sundry utensils used in the hospital were deposited and left on the plaintiff's land by the nurses and attendants at the hospital. These nurses were employed by, and worked under the directions of the defendants. After the hospital had been in operation for some time, a rope fence was extended around a portion of the hospital. Between this rope fence and the building used as a hospital, and within the enclosure thus roped off, a portion of the plaintiff's land was included, and this rope fence was afterwards suffered to remain as originally located until the hospital was finally abandoned. One of the stakes supporting this rope fence was located upon the plaintiff's land and was put there at the time the rope fence was erected. The plaintiff never gave the defendants permission to occupy or use any portion of his premises, and the same or any portion thereof was not taken by virtue of any warrant or process issued therefor." The passageway on the plaintiff's land was closed by the rope fence, and the plaintiff and his tenants were excluded from the use of it.

The plaintiff also introduced evidence that "after the hospital

had been in operation a couple of months, eight or nine cases of smallpox arose in six or seven houses in the immediate vicinity, including the plaintiff's house on Everett Street, and the evidence introduced by the plaintiff tended to show that smallpox was a dangerously contagious disease, and that the smallpox cases treated at the hospital caused the cases which arose in these houses in its neighborhood."

The plaintiff also introduced evidence that " in consequence of the location and maintenance of the hospital " his store and apartments were vacated, and that he "lost in rents by reason of the vacancies occasioned by the presence and operation of the hospital, and the repairs necessitated by the continued idleness of his premises about $1,600," and that when he got tenants it had to be at a reduced rate, making " a total loss to the plaintiff in rents, repairs and depreciation on account of the location and maintenance of the hospital of from thirty-one hundred to forty-one hundred dollars."

The plaintiff offered to prove " that the defendants had maintained the hospital in a negligent and careless manner, and that their carelessness in this respect made the hospital a nuisance to the plaintiff. The court refused to admit the evidence thus offered, and the plaintiff excepted."

The plaintiff also offered to prove "that there were suitable locations for a smallpox hospital within the city of Everett where the maintenance of the hospital could cause little or no damage to surrounding property, and that the defendants were negligent and careless in locating a smallpox hospital where they did, but the court refused to admit this evidence and the plaintiff excepted."

The defendants put in evidence the lease annexed to their answer, to which the plaintiff excepted. In addition, " The defendants testified orally that they were members of the board of health of the city of Everett, and that what they did in the establishment and maintenance of the hospital, they did as members of the board of health of the city of Everett." To this the plaintiff excepted. No evidence of the election, appointment or qualification of the defendants as members of the board of health of the city of Everett was introduced other than their own statements that they were such officers.

On cross-examination the defendants testified "that in locating the hospital where they did, they paid no attention to the fact that it was located within one hundred rods of inhabited dwellings in the city of Malden; that they did not consider smallpox a dangerous disease, and that if said hospital was properly conducted it would not be a source of danger."

The plaintiff asked for the following rulings:

"1. The defendants as members of the board of health of the city of Everett had no right to establish a hospital for the general treatment of smallpox cases gathered from various parts of the city of Everett, and covering a period of several months, and if they did this they exceeded their powers as members of the board of health, and they are liable for such damages as the plaintiff suffered thereby.

"2. Boards of health in acting under statutes authorizing them to seize and impress property must comply strictly with the statutes. They have no right to seize or to impress property against the consent of the owner, except by the warrant and process pointed out in the statutes, and there is no evidence in this case that the plaintiff's property was taken or impressed under the warrant and process provided in the statutes, and if you find that the defendants did seize or impress or use any portion of the plaintiff's property without his consent and to the exclusion of the plaintiff, the defendants are liable to the plaintiff for the damages resulting therefrom.

"3. The defendants as members of the board of health had no right to seize the plaintiff's property to the exclusion of the plaintiff's use of same. While if a case of smallpox arose in one of the plaintiff's houses, or in its immediate vicinity, they had the right as a board of health to regulate the use of the plaintiff's property, they had no right to exclude the plaintiff therefrom, except by the warrant and process provided in the statutes, and if they seized or excluded the plaintiff from the use of his property in any other manner, they are liable.

"4. The defendants as members of a board of health had no right to arbitrarily establish a hospital anywhere within the city of Everett for the general treatment of smallpox cases gathered from different parts of the city of Everett. They must exercise a reasonable discretion in selecting a site for such a hospital, and

if they did not exercise a reasonable discretion in selecting a site for such hospital and the plaintiff suffered damage to his property in the immediate vicinity of the site selected by the defendants, they are liable to him for the damages occasioned thereby.

"5. The defendants as members of the board of health of the city of Everett had no right to establish a hospital within one hundred rods of an inhabited dwelling in the adjoining city of Malden for the treatment of smallpox cases arising in different parts of the city of Everett, and without obtaining the consent of the city of Malden to such location, and if they did establish such hospital within one hundred rods of an inhabited dwelling in the city of Malden without obtaining the consent of the city of Malden to such location they exceeded their powers as members of the board of health, and such location of such hospital was unlawful, and if the plaintiff suffered damage by reason of the proximity of such hospital, the defendants are liable to the plaintiff for the damages occasioned thereby.

"6. If the defendants in the exercise of a reasonable discretion could have found a suitable site for a hospital, for the general treatment of smallpox cases arising in an epidemic extending over different parts of the city of Everett, and which site would occasion little or no damage to the abutting owners, and they neglected to find such site and arbitrarily established such a hospital in the midst of a populous neighborhood, they were negligent and careless in locating a hospital where they did, and if by reason of such location the plaintiff suffered damage, he is entitled to recover.

"7. If the defendants were negligent and careless in the conduct and management of the hospital established ·by them for the treatment of smallpox cases arising in various parts of the city of Everett, and thereby caused damage to the plaintiff, the plaintiff is entitled to recover.

"8. The location of the hospital in the midst of a populous neighborhood for the general treatment of smallpox cases arising in various parts of the city of Everett, and in an epidemic extending over several months is a nuisance to adjoining property owners, who have suffered damages thereby, and if the plaintiff suffered damage by reason of such location of a smallpox hospital for the general treatment of cases arising in the city of

Everett during an epidemic covering several months, the plaintiff is entitled to recover.

" 9. The defendants had no power to execute a lease of the premises on behalf of the city of Everett, and there is no evidence of any lawful taking of those premises by the city of Everett, and there is no evidence that the defendants as a board of health took the premises under the warrant and process provided in the statutes in cases where property may be taken for a smallpox hospital by a board of health, and if they occupied and used the premises for such hospital without lawfully taking them for the purpose, they occupied and used the premises at their peril, and if such occupation and use became a nuisance, causing damage to the plaintiff's property in the vicinity, he is entitled to compensation for the loss occasioned thereby.

" 10. When the case of the person who fell ill with the smallpox in the house afterwards used as a hospital terminated, and proper precautions had been taken by way of fumigation, etc., to safeguard the public health from danger of smallpox being disseminated from the house, the board of health had exhausted its jurisdiction to treat the house as a hospital, and the subsequent use of the house by them as a hospital for smallpox cases arising elsewhere was unlawful.

" 11. The defendants have not properly or sufficiently proved that they were members of the board of health."

These requests for rulings were refused, and the plaintiff excepted.

The presiding judge instructed the jury as follows: "It appearing by undisputed testimony that the defendants were members of, and constituted the board of health of the city of Everett, and they were acting as such in their official capacity in performing the acts complained of in the plaintiff's declaration, they are not to be held personally liable in this action, unless the acts which they did were unlawful, or were performed in an unlawful manner, or were in excess of their powers as a board of health, and of this there is no evidence in this case, and so I adopt a request made by the defendants and instruct you that there is no evidence to warrant a verdict for the plaintiff, and his action cannot be maintained."

He directed the jury to return a verdict for the defendants, and the plaintiff excepted.

*J. J. Irwin,* for the plaintiff.

*W. S. Thompson,* for the defendants.

LORING, J. [After the foregoing statement of the case.] 1. It is settled in this Commonwealth, (*Webber* v. *Davis,* 5 Allen, 393; *Commonwealth* v. *Kane,* 108 Mass. 423; *Commonwealth* v. *Tobin,* 108 Mass. 426,) and elsewhere, (Wigmore on Evidence, § 2535,) that in general it is not necessary, in proving that a man is a public officer, to produce his commission. It is enough to prove that he has acted as such. And it accordingly was decided in *Commonwealth* v. *Wright,* 158 Mass. 149, that it was competent for the officer himself to testify that he was such public officer. In that case the court did not find it necessary to decide whether such evidence, not accompanied by evidence that he had previously publicly performed the duties of the office in question, would be sufficient to warrant a finding that he actually held the office by legal appointment. The testimony of the defendants that they were members of the board of health of the city of Everett was therefore competent. As the case must in our opinion go back for another trial we do not find it necessary to decide the question left open in *Commonwealth* v. *Wright, ubi supra,* on which the correctness of the last ruling asked for depends.

2. The plaintiff's land was used by ambulances carrying patients to the hospital and taking away from it the bodies of patients who had died there. A rope was put around the plaintiff's driveway, which was thereby brought within the hospital grounds, and the plaintiff and his tenants were excluded from the use of it. It is admitted that this was done without the plaintiff's permission and without action under R. L. c. 75, § 46. We assume that if a case of smallpox had broken out in the plaintiff's house his driveway could have been roped off in regulating the disease on his premises as a menace to the public. But that is not the case we have here. What we have here is a case where a smallpox hospital was located on land hired for the purpose, adjoining the plaintiff's land, and in a building sixteen and one half feet distant

from one of the plaintiff's buildings and nineteen feet from another, and where the plaintiff's driveway and apparently other portions of his land have been appropriated to the use of the hospital to the exclusion of the plaintiff and his tenants. It appears that the defendants did this without his (the plaintiff's) consent, and without action under R. L. c. 75, § 46.

If this was done by the defendants or by persons in their presence and under their direction, (*Elder* v. *Bemis*, 2 Met. 599,) they are liable. *Hersey* v. *Chapin*, 162 Mass. 176. We think that the jury would have been justified in finding that these acts were done by the defendants or under their direction by persons in their presence. It is to be noted that the defendants did not put in any evidence dealing specifically with this claim of the plaintiff. All that they testified to was " that what they did in the establishment and maintenance of the hospital, they did as members of the board of health of the city of Everett." As members of the board of health they had no right to take the plaintiff's land without taking action under R. L. c. 75, § 46.

The second and third rulings asked for should have been given.

3. More than that, it is not true that a public officer is exempt from liability for all acts done in his official capacity. In an action brought against a highway surveyor for digging a watercourse in a highway which incommoded the plaintiff whose land abutted on the way in his access to that land, it was held that it was a defence that the watercourse was made by the defendant as a highway surveyor, and that it was not competent to introduce evidence that the digging of the watercourse was not necessary in the repair of the way. *Benjamin* v. *Wheeler*, 8 Gray, 409; *S. C.* 15 Gray, 486. So in an action against a surveyor by the owner of the fee in the way, for taking gravel from a bank within the way and using it to repair another public way, it was held that the surveyor's right to exemption did not depend upon the jury's deciding that he took the gravel from the bank for the purpose of repairing that part of the way, for that would be " substantially equivalent to trying the questions of the necessity of the repairs and the motives and good faith of the surveyor, which, as has already been decided, at a former stage of

this case, cannot be done." *Denniston* v. *Clark*, 125 Mass. 216. On the other hand it was held in the recent case of *Moynihan* v. *Todd*, 188 Mass. 301, that a highway surveyor was liable for damage caused by his personal negligence in blasting a rock, which as a highway surveyor he had decided should be removed from the highway of which he had charge.

The distinction is the distinction laid down in *Child* v. *Boston*, 4 Allen, 41, between the exercise by a highway surveyor of the discretion put upon him by law as to what ought to be done, (acts which are *quasi* judicial or legislative in character,) and acts done by the surveyor in carrying into effect what in his discretion he had decided ought to be done (ministerial acts done in carrying out a plan adopted in the first capacity).

In the case at bar in fixing on the location of the hospital the defendants were exercising a discretion which the Legislature by R. L. c. 75, § 42, had required them to exercise as public officers. *Manning* v. *Bruce*, 186 Mass. 282. *Frazer* v. *Chicago*, 186 Ill. 480. Their decision on the question being *quasi* judicial or *quasi* legislative was final. It was not competent to make them liable for a mistake or for negligence in the exercise of it, that is, in the location of the hospital. *Benjamin* v. *Wheeler*, 8 Gray, 409 ; *S. C.* 15 Gray, 486. *Denniston* v. *Clark*, 125 Mass. 216. See also *Dillingham* v. *Snow*, 5 Mass. 547 ; *Turner* v. *Dartmouth*, 13 Allen, 291 ; *Upham* v. *Marsh*, 128 Mass. 546 ; *Williams* v. *Adams*, 3 Allen, 171. Evidence that the defendants were negligent and careless in locating the hospital was rightly excluded. The first, fourth, sixth and tenth rulings requested were properly refused.

Whether the judge was right in excluding evidence that " the defendants had maintained the hospital in a negligent and careless manner and that their carelessness in this respect made the hospital a nuisance to the plaintiff " depends upon whether this was an offer to prove that they were personally guilty of a misfeasance in the performance of a ministerial duty, like negligently setting off a blast in removing a rock from a highway, which it had been properly decided was to be removed.

If the defendants were personally guilty of a misfeasance in

such a matter and the hospital was in consequence a nuisance, the case comes within *Moynihan* v. *Todd*, 188 Mass. 301.

In connection with this offer of evidence it is to be borne in mind that there was evidence, that " after the hospital had been in operation a couple of months, eight or nine cases of smallpox arose in six or seven houses in the immediate vicinity, including the plaintiff's house on Everett Street, and the evidence introduced by the plaintiff tended to show that smallpox was a dangerously contagious disease, and that the smallpox cases treated at the hospital caused the cases which arose in these houses in its neighborhood."

Where a plaintiff suffers a loss of rents from the location of a smallpox hospital in the neighborhood on land leased for the purpose but where the hospital is not improperly conducted, he has no remedy. That is a case of *damnum absque injuria*. See *Callender* v. *Marsh*, 1 Pick. 418, 432; *Manning* v. *Bruce*, 186 Mass. 282.

But that is not the case at bar. In the case at bar it could have been found that the hospital was a nuisance in that it had caused cases of smallpox to break out in the neighboring house of the plaintiff. Cases in which it is held that a hospital can be abated (*Haag* v. *Commissioners of Vanderburgh County*, 60 Ind. 511 ; *Metropolitan Asylum District* v. *Hill*, 6 App. Cas. 193 ; *Baltimore* v. *Fairfield Improvement Co.* 87 Md. 352; *Bendelow* v. *Wortley Union*, 57 L. J. (N. S.) Ch. 762) do not reach the question now before us.

We have been referred to no case, in which it has been held that a board of health although personally negligent was liable. See, however, in this connection *Aaron* v. *Broiles*, 64 Tex. 316.

If the defendants were personally negligent in the maintenance of the hospital and in consequence of that negligence the hospital became a nuisance to the plaintiff's adjoining houses and land, the defendants would seem to be liable within the rule of *Moynihan* v. *Todd*, 188 Mass. 301, provided their negligence is a misfeasance as distinguished from a nonfeasance.

If they are guilty of a nonfeasance only, no action lies against them. The cases are collected in *Moynihan* v. *Todd*, 188 Mass. 301, 303, 304.

It is settled in England (where the distinction between a nonfeasance and a misfeasance in case of public officers obtains) that a municipality is liable for a misfeasance if having the care of a public way it constructs in it a drain and allows that drain to fall into a defective condition for lack of repairs. *Borough of Bathurst* v. *Macpherson*, 4 App. Cas. 256. See also *Municipality of Pictou* v. *Geldert*, [1893] A. C. 524, 531; *Municipal Council of Sydney* v. *Bourke*, [1895] A. C. 433, 441. And further in this connection see *Evans* v. *Liverpool Corporation*, [1906] 1 K. B. 160.*

It is worthy of being noted that the plaintiff in the Bathurst case was a traveller on the highway.

These cases, however, are not conclusive of the question in this Commonwealth. For if it be assumed that such a case is a case of misfeasance and not a case of nonfeasance, the further question arises in this Commonwealth which apparently does not arise in such cases in England and its dependencies: Whose misfeasance is it?

Where an action is brought in England or in one of its dependencies against the municipality which is charged with the maintenance of a public way in which a drain is constructed by it, no difficulty arises. For in England since the case of *Foreman* v. *Mayor of Canterbury*, L. R. 6 Q. B. 214, the acts of the persons employed in repairing the way are the acts of the municipality. See *Moynihan* v. *Todd*, 188 Mass. 301, 304, and *Cowley* v. *Newmarket Local Board*, [1892] A. C. 345; *Municipal Council of Sydney* v. *Bourke*, [1895] A. C. 433, 442.

For example, in England the act of constructing the drain in the highway in question in the Bathurst case was, in legal contemplation, the act of the municipality upon which the duty of caring for that way had been imposed.

That, however, is not the law in this Commonwealth, nor generally in the United States, as is pointed out in *Moynihan* v. *Todd*, 188 Mass. 301, 304. Here such a drain, if constructed by employees, is not in legal contemplation constructed by the municipality which pays the employees out of taxes collected by it, nor is it in legal contemplation constructed by

---

* See also *Tozeland* v. *West Ham Union*, [1906] 1 K. B. 538, reported after this decision.

the surveyor who has charge of those employees.  Those employees are the employees of the public, and it is because they are the employees of the public that neither the town which pays them, (see for example *Howard* v. *Worcester*, 153 Mass. 426,) nor the surveyor who has charge of them, (*McKenna* v. *Kimball*, 145 Mass. 555, for example,) is liable for acts of negligence on their part.  The rule of *respondeat superior* does not make either the town or the surveyor liable, because the employees are the employees neither of the town nor of the surveyor but of the public.  *Moynihan* v. *Todd*, 188 Mass. 301, 305.  See Bro. Abr. *Action sur le case*, pl. 93, where it is laid down that the reason why a traveller on a highway cannot recover for damage caused to his horse by the way being out of repair is this: " *Car est populus et serra reforme per presentment.*"  See also *Nicholson* v. *Detroit*, 129 Mich. 246; *Maximilian* v. *Mayor of New York*, 62 N. Y. 160, 165; *Love* v. *Atlanta*, 95 Ga. 129.

It follows that the plaintiff does not make out a case against the board of health by showing that the hospital was a nuisance and that at the time it was under their control.  The plaintiff must go one step further to charge the defendants with the nuisance and prove that it was caused by acts of misfeasance on the part of the defendants or (as in *Elder* v. *Bemis*, 2 Met. 599) by an act or acts done by another in the personal presence which are thus the acts of the defendants.  The plaintiff's offer " to prove that the defendants had maintained the hospital in a negligent and careless manner, and that their carelessness in this respect made the hospital a nuisance to the plaintiff " did not go far enough to charge the defendants with liability. It did not specify an act of misfeasance on the defendants' part which had caused the hospital to be a nuisance, by which we understand the plaintiff to mean which had caused the hospital to be the cause of the disease of smallpox that broke out in the house or houses of the plaintiff.  This evidence was excluded properly, and the seventh ruling asked for was refused rightly.

4.  We do not agree with the plaintiff that R. L. c. 75, § 42, applies to towns only.  The word " town " may include a city. R. L. c. 8, § 5, cl. 23.  If the plaintiff is right, in case of a

sudden epidemic breaking out in a city which has not established an isolated hospital under R. L. c. 75, § 40, all that can be done is to send such persons to a hospital in an adjoining city. We do not think that this is so. If the defendants were the board of health for Everett, the first ruling asked for was refused rightly.

5. The plaintiff's dwelling houses were all in Everett. He is not hurt by the hospital here in question having been established within one hundred rods of inhabited dwelling houses in Malden, in violation of R. L. c. 75, § 37. The fifth ruling asked for was refused rightly.

*Exceptions sustained.*