ALBION C. COOK & others *vs.* CITY OF FALL RIVER.

Bristol.    March 30, 31, 1921. — May 28, 1921.

Present: RUGG, C. J., DE COURCY, PIERCE, CARROLL, & JENNEY, JJ.

*Nuisance. Hospital. Tuberculosis. Witness,* Expert. *Evidence,* Opinion: expert. *Equity Pleading and Practice,* Master.

A public hospital for the treatment of tuberculosis is not as a matter of law a nuisance.

A master, to whom was referred a suit in equity to enjoin a city, upon which the State department of health under St. 1912, c. 151, had made a demand for a hospital for the reception of persons having tuberculosis, from erecting such a hospital at a certain site, found, without a report of the evidence, that he was " unable to find that the erection and maintenance of a well equipped and controlled tuberculosis municipal hospital will inevitably create a nuisance;" that there was very little danger of infection from the maintenance of the hospital, provided it was well managed; that there would be no substantial depreciation of land values after the hospital had been in existence for a time; that experience " has demonstrated that there is no real danger from a well conducted hospital or sanatorium and there is no valid reason for fear in regard to it;" that whatever danger of infection there might be will be no greater to the neighborhood chosen than there would be wherever the hospital might be located in the city and, " if there is any danger to be expected from patients traversing the streets in travelling to and from the hospital, that danger would be the same wherever the hospital would be located." *Held,* that

(1) It was not to be assumed in advance that such a hospital, well equipped and managed under the supervision of public health boards, would be a nuisance;

(2) Upon the facts above described, a municipal corporation, in order to protect the plaintiff from dangers which were found by the master to be unreal, would not be enjoined from erecting the public hospital;

(3) *Whether,* in any circumstances, purely mental discomfort would constitute a nuisance, was not determined ;

(4) Mere depreciation of the market value of the plaintiff's land, if it existed, would not be decisive in his favor.

At the hearing of the suit above described, the master within his discretion, for the limited purpose of showing why the site in question was chosen and to meet a possible contention that the municipal authorities acted in bad faith or with unsound discretion, properly admitted reports of experts recommending the selection of the site to the municipal authorities.

An exception will not be sustained to an exercise by a master of his discretion in finding, upon evidence warranting such finding, that a witness offered as an expert is qualified to give testimony as such.

BILL IN EQUITY, filed in the Superior Court on June 3, 1920, to enjoin the defendant from erecting a hospital for the reception of persons having tuberculosis in that part of Fall River called the Highlands.

In the Superior Court the suit was referred to a master. The testimony of Richard P. Borden, Esquire, referred to in the opinion, was reported in full in the record. He testified, among other things, in substance that, from 1906 on, about one half of his time had been devoted to studies of matters connected with hospitals, public health matters, not from the medical point of view, but from the preventive, institutional and sanitary point of view, and that since 1911 he had given especial attention and study to the care in hospitals of persons suffering from tuberculosis, naming civic and public bodies with and for whom he had acted in such matters. He then was allowed to be asked, " Now what in your opinion will the location of the tuberculosis hospital upon that site, what will be the effect of that upon the health of the neighborhood? " and answered, "None, except as a possibility from the educative value which has been ascribed to it by various experts, of which I am not at all certain."

Mr. Borden further described in detail investigations which he had made in several cities and towns widely separated with relation to the effect of the location of a hospital upon real estate in the neighborhood, and was then permitted to be asked and to answer the following questions:

Q. " Have you formed an opinion as the result of your investigations in regard to the effect of the location of a hospital upon the value of real estate in the neighborhood? " A. "Yes, sir."— Q. "And what is your opinion as to the effect upon the values of real estate? " A. " There is no appreciable effect after the hospital has been in existence for a certain time. There always is a diminution in the value of real estate before a hospital has been in a place for a certain time." — Q. " And after that?" A. " That disappears."

Material facts found by the master without a report of the evidence, and exceptions by the plaintiffs are described in the opinion. The suit was heard upon the exceptions and on the question of final decree by Thayer, J., by whose order there were entered an interlocutory decree overruling the exceptions and confirming the

report and a final decree dismissing the bill with costs. The plaintiffs appealed.

*C. R. Cummings,* (*J. B. Cummings* with him,) for the plaintiffs.

*D. R. Radovsky,* for the defendant.

DE COURCY, J. This is a bill in equity to enjoin the erection of a tuberculosis hospital, on the ground that it will constitute a nuisance. The case was sent to a master and he found the following salient facts: By virtue of St. 1912, c. 151, it became the duty of the city of Fall River to establish and maintain within its limits a hospital for persons having tuberculosis; and it was subject to a penalty of not more than $500 for each refusal or neglect to do so when requested by the State board of health. The city had been using the Bay Street hospital for tuberculosis patients since 1910. The State board of health, and its successor, the State department of health, disapproved of this building as a permanent structure on account of its inadequacy as to size, location and facilities; from time to time requested the city to erect and maintain a suitable hospital for the care and treatment of tuberculosis patients; and on March 25, 1915, threatened to take action through the Attorney General if the city should fail to do so by September 1. The location of the required hospital excited a great deal of public attention, and engaged the active interest of representatives of various organizations of the city, in addition to the board of health and the board of trustees of hospitals for the city of Fall River, established under St. 1913, c. 299. The board of trustees of hospitals called in three eminent experts to advise them as to the proper site; and, after viewing various locations, these unanimously reported that the Highland site (the one in question) was the best. This location was approved also by the local board of health and by the State department of health.

The locus is a portion of a forty-acre tract, owned by the city, and known as the Poor Farm land. Here are maintained the City General Hospital, built in 1895, and a temporary hospital for contagious diseases. Tuberculosis patients were treated there in shacks and tents until 1910. In February, 1920, the city turned over to the board of hospital trustees approximately fifteen acres of this tract. The trustees are having plans prepared for the erection of a tuberculosis hospital at an estimated cost of $400,000

to $425,000 for the accommodation of from one hundred and fifty to two hundred patients.

The plaintiffs reside in the Highland district, but the land of only two of them is immediately adjacent to the hospital location. They are strongly opposed to having in the vicinity of their homes a hospital which will bring together for treatment many patients who are suffering from this infectious disease, because it will affect the comfortable enjoyment of their property and may depreciate its market value. The master finds, however, that there is very little danger of infection, provided the hospital is well managed, and that there will be no substantial depreciation of land values after the hospital has been in existence for a time. Practically the same conditions prevail as to all the sites examined, and the local health authorities consider this site more suitable from a public health point of view than any other that is available. The controlling fact is that the master is "unable to find that the erection and maintenance of a well equipped and controlled tuberculosis municipal hospital will inevitably create a nuisance." He finds: "Experience has demonstrated that there is no real danger from a well conducted hospital or sanatorium and there is no valid reason for fear in regard to it. Whatever danger of infection there may be will be no greater to the neighborhood in the Highland section than there would be wherever said hospital would be located, and, if there is any danger to be expected from patients traversing the streets in travelling to and from the hospital, that danger would be the same wherever the hospital would be located."

On these facts the judge could not enjoin the defendant without virtually nullifying the statute which requires the city to maintain a tuberculosis hospital within its limits, as the objections raised by these plaintiffs apply with at least equal force to every other available site. Hospitals for contagious diseases must be established and maintained for the protection of the general public; and it is not to be assumed in advance that such a hospital, well equipped and managed under the supervision of public health boards, will be a nuisance. *Manning* v. *Bruce*, 186 Mass. 282. In *Anon*, 3 Atk. 750, 751, on a motion for an injunction to stay the building of a house to inoculate for the smallpox, it was said by Lord Hardwicke: "the fears of mankind, though they may be reasonable ones, will not create a nuisance." Without going so

far as to say that purely mental discomfort cannot constitute a nuisance, certainly the law will not enjoin the erection of a municipal hospital on facts such as are disclosed by this record, in order to protect the plaintiffs from dangers which are found to be unreal. *Frost* v. *Welsh National Memorial Association,* [1918] 2 Ch. 180. *Board of Health* v. *North American Home,* 7 Buch. 464. Depreciation of the market value of the plaintiffs' land, assuming it to be proved, would not be decisive in their favor. *Barry* v. *Smith,* 191 Mass. 78, 89. In *Everett* v. *Paschall,* 61 Wash. 47, relied on by the plaintiffs, the defendant maintained in his cottage, adjoining the lots of the plaintiffs, a private sanatorium for the treatment of tuberculosis patients; and the injunction was granted partly at least under the influence of a statute of that State which broadened the definition of nuisance. There is nothing in that case, nor in *Cherry* v. *Williams,* 147 N. C. 452, to support a claim that a public hospital for the treatment of tuberculosis is a nuisance *per se.* In view of the findings of the master we should have to go substantially to this extreme in order to say that the trial judge was not warranted in dismissing the bill for an injunction.

There were certain exceptions to the master's report relating to the admission of evidence. We find no reversible error in the admission of the report made by Dr. Woodward and two other experts to the trustees of hospitals, which merely recommended the Highland site as the most desirable one among those specified. The same is true of the written approval of this site by the State board of health, which was required by statute, and of the records of their meeting at which the approval was voted. St. 1912, c. 151. The master in his discretion admitted this evidence for a limited purpose: that of showing why this site was selected, and probably to meet any insinuation of lack of good faith or sound discretion on the part of the trustees.

The other exceptions relate to the qualification of Mr. Borden as an expert, and the admissibility of his testimony. The determination of his competency rested largely in the discretion of the master. It seems to have been exercised properly. *Jordan* v. *Adams Gas Light Co.* 231 Mass. 186. We find no substantial error in the particular questions objected to, in view of his testimony as a whole.

*Decree affirmed with costs.*