BERTRAM A. BROOKS *vs.* GEORGE B. JACOBS.

Somerset.    Opinion, April 2, 1943.

*Bernstein & Bernstein,* for the plaintiff.

*William B. Mahoney,*

*Clayton E. Eames,* for the defendant.

Sitting: Sturgis, C.J., Thaxter, Hudson, Manser, Murchie, Chapman, JJ.

Hudson, J.    This is an action of negligence brought by the plaintiff against his former manual training schoolteacher. Jury tried, verdict was for the defendant. The plaintiff presents twenty-one exceptions, four with relation to admissibility of evidence (only one is now pressed), four to instructions to the jury, and thirteen to refusals of requested insturctions. Although the exceptions to instructions given and to the refusals to instruct are many, they really involve one issue of law: viz., the duty, if any, owed by the defendant to the plaintiff as a basis of negligence.

The accident happened on January 4, 1939. Then and for many years prior thereto, the defendant was and had been a manual training teacher in the Madison High School, and on

that date, the plaintiff, a senior twenty years old, was a student in his class.

Besides the manual training class under the defendant, there were other groups receiving instruction in the high school, each of which had a teacher and among which were the auto mechanics, electricity, and plumbing groups.

The superintending school committee of the town of Madison, having caused a rural school building to be torn down, voted on October 14, 1938, to construct a vocational training building in the village near the high school building, using material, so far as sufficient and suitable, that came from the razed building, and for labor, the work of the boys forming the groups or classes above-mentioned, supplemented by young men of the N.Y.A. The students were not compelled to work on the new building; they could not if their parents objected. They received no compensation. What they did constituted a part of their school course work, for which they were given credit, and in time was confined to their instruction periods.

On the day of the accident (as claimed by the plaintiff), he and another boy were directed by the defendant to go to the building then in process of construction, around all of which a temporary staging had been erected, and shovel off the snow from the staging and the roof of the building, or anyway part of it. The defense claimed that on that particular day the boys requested the right and were permitted to do this work. In the performance of it, whether directed or permitted, the plaintiff, while on the upper staging, due to a breaking "ledger board," was "catapulted" to the ground and seriously injured.

Nailed at both ends, this board led from an outside upright to the window sill. It with other ledger boards helped to support the flooring of the staging. The evidence nowhere discloses who in fact selected and "nailed on" this particular ledger board. Although new, it broke transversely in the vicinity of a certain pine knot hole.

An issue was raised as to whether or not the defendant had full charge of the construction of this building, the plaintiff claiming that he did, the defendant insisting, however, that it was under the control and direction of the superintending school committee and the superintendent, who he asserted obtained the assistance and cooperation of the different teaching heads of the above-mentioned groups in the carrying on of the work, each teacher to direct the work of his own class. It did appear, however, by admission of the defendant, that he assisted in selection of the site for the building and prepared the plans which were accepted by the school committee. At times he was at the building while his students were working there. He claimed to have no authority over those of the other classes so working, although he said that if they asked him a question he would give them the requested information. He denied any personal act of negligence.

The relationship of teachers to their pupils has been stated to be in the nature of *in loco parentis.* We find no Maine case directly so holding, but language in *Patterson* v. *Nutter,* 78 Me., 509, 7 A., 273, so denotes, as therein it is said: "He is placed *in charge* some times of large numbers of children. . . . He must govern . . . and control. . . ." (Italics ours.) In the Patterson case, supra, is cited *State* v. *Pendergrass,* 2 D. & B. (N. C.), 365, in which this statement is made: "The teacher is the substitute of the parent. . . ."

In *Fulgoni* v. *Johnston,* 302 Mass., 421, 19 N. E., (2d), 542, it is stated on page 423:

"The defendant" (a manual training schoolteacher) "was a public servant with limited duties and powers. At least since the leading cases of *Moynihan* v. *Todd,* 188 Mass. 301, and *Barry* v. *Smith,* 191 Mass. 78, it has been settled in this Commonwealth that public officers engaged wholly in the performance of public duties are liable only for their own acts of misfeasance in connection with ministerial matters."

Perhaps the leading "public officer" case in Massachusetts is *Moynihan* v. *Todd,* supra, in which the defendant was a superintendent of streets. Therein it is stated on page 305:

> "We are of opinion that the principle which underlies the rule that public officers and other agencies of government are not liable for negligence in the performance of public duties goes no further than to relieve them from liability for non-feasance, and for the misfeasances of their servants or agents. For a personal act of misfeasance, we are of opinion that a party should be held liable to one injured by it, as well when in the performance of a public duty as when otherwise engaged. We think that the general course of decision in this Commonwealth is not in conflict with this view. But for acts of misfeasance of a servant or agent in such cases, there is no liability. This is because the rule *respondeat superior* does not apply."

We have no doubt the Massachusetts court was speaking of misfeasance and nonfeasance in accordance with their ordinary and usual meaning. Misfeasance is "The performance of an act which might lawfully be done, in an improper manner, by which another person receives an injury," while nonfeasance is "The non-performance of some act which ought to be performed." *Bouvier's* 1934 *Law Dictionary,* on pages 809 and 852. In *Moulton* v. *Scully,* 111 Me., 428, 89 A., 944, on page 434, nonfeasance is defined as "an omission to perform a required duty at all, or a total neglect of a duty; the omission of an act which a person ought to do."

In *Ducey* v. *Brunell,* 250 Mass., 114, 117, Chief Justice Rugg stated the Massachusetts public officer rule as follows:

> "A public officer is liable for any tort of *active misfeasance personally committed* by him while acting in the discharge of his ministerial duties as such and not as the special agent of the municipality, although the munici-

pality in the absence of special statute may not be liable therefor," (Italics ours),

citing among other cases *Moynihan* v. *Todd*, supra, and *Barry* v. *Smith*, supra. Also see *Pease* v. *Parsons*, 273 Mass., 111.

But our Court, in *Bowden* v. *Derby*, 97 Me., 536, 55 A., 417, in dealing with a road commissioner as a public officer, has adopted a somewhat different rule, for it said on pages 541 and 542:

> "The dictates of humanity, and a proper regard for the lives and safety of the workmen engaged upon public no less than private works require that some one should be bound in law to furnish a reasonably safe place in which to do their work. . . . While he" (meaning the road commissioner) "need not answer for another he must answer for himself. *A personal liability attaches to him for his failure to exercise reasonable care in providing safe machinery with which, and a safe place in which, the defendant might work.*" (Italics ours.)

Thus, this Court has held that a public officer is liable not only for his own affirmative act of negligence but as well for his own negligent inaction. This difference between the Massachusetts and Maine rules probably was noted by Mr. Justice Qua when in *Fulgoni* v. *Johnston*, supra, on page 423 he stated: "Compare *Bowden* v. *Derby*, 97 Maine, 536." This is likewise indicated by examination of *Moffitt et al.* v. *Davis et al.*, 205 N. C., 565, 172 S. E., 317, 318, the other case cited by him for comparison purposes, since in the *Moffitt* case, supra, it was held as in Maine "that one who holds a public office, administrative in character, and in reference to an act clearly ministerial, may be held individually liable, in a civil action, to one who has received special injuries in consequence of *his failure to perform* or negligence in the performance of his official duty." (Italics ours.)

The presiding Justice in the instant case gave the Massa-

chusetts rule and limited liability "to his" (the defendant's) "own personal misfeasance." He employed virtually the identical words appearing on page 423 of the *Fulgoni* case, supra, when he said:

> "To put it in legal language, a public officer engaged wholly in the performance of a public duty, is liable only for *his own act of misfeasance* in connection with ministerial matters." (Italics ours.)

The claimed negligent acts as alleged in the plaintiff's writ and as to which evidence was introduced (the transcript is made a part of the bill of exceptions) are those both of misfeasance and nonfeasance as previously defined: for instance, failure to "provide a suitable and safe staging," failure to "cause it to be set up in a suitable and safe manner," failure to "cause it to be kept and maintained in a safe and suitable condition," failure to "employ suitable and careful persons in erecting and maintaining said staging," permitting "the use of old, worn and rotten boards as planking," permitting "the use of a board with a patent knot in its center," permitting "old rusty nails to be used," failure "to use sufficient nails," failure "to use boards of sufficient thickness and strength," the use of "boards too thin and too light," failure "to inspect the staging to ascertain its soundness," and failure "to warn the plaintiff of the dangerous condition . . . which he, the defendant, well knew or in the exercise of due care should have known."

So it will be seen that many of the plaintiff's grounds for recovery based on acts of claimed nonfeasance, recoverable under the Maine rule aforesaid, were denied him, even if the defendant as teacher were rightly regarded a public officer. It would seem, however, that if a schoolteacher were not a public officer, *a fortiori* he would be liable for his personal acts of nonfeasance, if such spelled a failure to discharge a duty he owed the injured party and constituted the proximate cause of such party's injuries. Thus it becomes unnecessary herein to determine whether a schoolteacher is or is not such a public officer.

In *Guyten* v. *Rhodes*, 29 N. E. (2d), 444 (Ohio), it is stated on page 445:

"If the teacher is liable for malfeasance, there appears no sound reason why he should not be held liable for either misfeasance or nonfeasance, if his acts or neglect are the direct proximate cause of injury to the pupil."

In Michigan the Court in *Gaincott* v. *Davis*, 281 Mich., 515, 275 N. W., 229, said on page 231:

"At least in a limited sense the relation of a teacher to a pupil is that of one in loco parentis. We are not here concerned with the law applicable to punishment of a pupil by a teacher; but rather with the law applicable to the duties of a teacher in the care and custody of a pupil. In the faithful discharge of such duties the teacher is bound to use reasonable care, tested in the light of the existing relationship. If, through negligence, the teacher is guilty of a breach of such duty and in consequence thereof a pupil suffers injury, liability results. It is not essential to such liability that the teacher's negligence should be so extreme as to be wanton or willful."

The *Guyten* and *Gaincott* cases, supra, seem to indicate that the duty is based on the teacher-pupil relationship of "in loco parentis," and that because the teacher has the care and custody of his pupils with right to govern and control them in their school work, he must so act as not negligently to injure them, whether the act is one of misfeasance or nonfeasance.

But apart from the teacher-pupil relationship, there is a "common-law obligation that every person must so act or use *that which he controls* as not to injure another." (Italics ours.) 35 Am. Jur., Sec. 584, page 1020. This principle has been invoked in determining liability of an employee to third parties. In Sec. 587 of 35 Am. Jur., it is stated on page 1024:

"As in any case wherein liability on the part of the indi-

vidual is predicable of negligence, liability of an employee to a third person, where there is a master and servant relationship, is based upon the common-law duty resting upon every person to use due care and proper precaution so that he does not act or use that which he controls so as to negligently injure another person."

The plaintiff's claim is that the superintending school committee put the defendant with his consent in full charge of the erection of this building with the right to make use of his pupils in that work unless they objected, over whom he had control and direction, and so as a matter of law he was duty bound "to use due care and proper precaution" so that no negligent act of his, either of commission or omission, should proximately result in injury to them.

Whether the defendant in fact took on the erection of this building and had full charge thereof was a question of fact for the jury. If he did, we think that he assumed the duty as stated in the plaintiff's contention, with the result of liability if he failed in the discharge of that duty either by misfeasance or nonfeasance, provided such failure were the proximate cause of the injuries received by the plaintiff.

In 35 Am. Jur., Sec. 585, on page 1022, it is stated:

"Much criticism has been directed at the 'attenuated refinement,' as it has been termed, which attempts to fix the liability of an employee to a third person by a consideration of the wrongful conduct as misfeasance or as nonfeasance, and the tendency is to repudiate the doctrine of nonliability for nonfeasance and to hold the employee liable for the breach of any duty which he owes to a third person without regard to whether his conduct is properly characterized as misfeasance or nonfeasance."

We agree with this statement. We think liability in such a situation is dependent upon the establishment of the duty to the third party and breach thereof as the proximate cause.

Furthermore, we believe that when one accepts responsibility of due care towards those under his direction and control he must exercise that care not only as to what he himself actually does in its observance but as to what he fails to do, which in the exercise of due care he should have done. This duty is not entirely but somewhat analogous to that which an employee owes to his fellow employee, as expounded in *Hare* v. *McIntire*, 82 Me., 240. On page 245 our Court stated:

> And we are of opinion that where two or more persons are engaged in the same general business of a common employer, in which their mutual safety depends somewhat upon the care exercised by them respectively, each owes to the other a duty resulting from their relation of fellow-servants, to exercise such care in the prosecution of their work as men of ordinary prudence usually use in like circumstances; and he who fails in that respect is responsible for a resulting personal injury to his fellow-servant. Such a liability would necessarily have a salutary influence in inducing care on their part."

"What Are Misfeasances" as distinguished from nonfeasances is discussed in Sec. 586 of 35 Am. Jur., supra, on page 1023. Therein a distinction is noted between breach of a duty owed by the employee to his employer by virtue of their contract and that independently owed to the third party, the breach of the former constituting a nonfeasance and of the latter a misfeasance. Finally it is stated: "Thus, the meaning of nonfeasance is narrowed down to mere failure to enter upon the performance of a duty which the contract imposes upon the servant."

If this be sound (we do not say it is or is not), it will not avail this defendant, because such a distinction was neither given nor explained to the jury and it had the right to understand and should have been expected to understand from the instruction as given that the defendant would not be liable unless he were guilty of some active misfeasance personally

committed. Nowhere in the charge do we find any definition of the meaning of misfeasance and nonfeasance. It is highly improbable that the jury without such had any proper conception of their legal meaning.

Following a bench conference after the charge, the presiding Justice said:

"I am requested to say that the fact that the defendant was a manual-training schoolteacher cannot shield him from the consequences of his own negligence. That is what is requested. I say he has a responsibility; a limited responsibility. He is responsible *for his own acts;* not the acts of others." (Italics ours.)

But whether a failure to act was intended to be embraced within the words "his own acts" was not clarified to the jury. The jury might have conceived that the words "his own acts" had reference only to his personal affirmative acts and so would exclude failure of action, especially in view of instructions previously given in the charge, of which mention has already been made. It should have been made clear to the jury that, although the defendant were the manual training schoolteacher of the plaintiff, if it found that the defendant had full charge and control of the work involved in the erection of this building, he would be liable for any act of negligence proximately causing the injuries of the plaintiff whether said negligence was due to an affirmative act upon his part or a failure by him to do that which a reasonably prudent person would have done under like circumstances.

We conclude, whether the defendant were rightly or wrongly regarded as a public officer coming within the Maine public officer rule, the plaintiff was prejudicially aggrieved by the instruction of the presiding Justice. This being so, we need not consider other exceptions presented by the plaintiff.

*Exceptions sustained.*