EDITH L. BAHCELI vs. YASAR BAHCELI.

Norfolk.  June 10, 1980. — August 28, 1980.

Present: GOODMAN, BROWN, & NOLAN, JJ.

*Divorce,* Custody of child, Modification of judgment. *Practice, Civil,*
    Relief from judgment or order.

An award of alimony in a divorce proceeding was properly supported
    by the detailed findings of the judge under G. L. c. 208, § 34. [449]
In a divorce action, the judge's award of custody of a minor child to her
    father was amply supported by the evidence. [449-450]
The judge in a divorce action did not abuse his discretion in denying
    without an evidentiary hearing the wife's motion for relief from judg-
    ment pursuant to Mass. R. Dom. Rel. P. 60(b). [450]
A probate judge erred in dismissing under Mass. R. Dom. Rel. P. 12(b)(6)
    a complaint for modification of a custody award which was filed by
    the child's uncle pursuant to G. L. c. 208, § 28, and which sought
    restoration of custody to the child's mother on the basis of a change in
    circumstances. [450]

CIVIL ACTION commenced in the Probate Court for the
county of Norfolk on August 25, 1976.

The case was heard by *Sullivan, J.*

A complaint for modification, filed on March 23, 1979,
was heard by *Warner, J.*, and a motion for relief from judg-
ment, filed on July 30, 1979, was heard by *Sullivan, J.*

*Thomas V. Urmy, Jr. (Fernande R. V. Duffly* with him)
for the plaintiff.

*James D. St. Clair (Ronald A. Witmer* with him) for the
defendant.

NOLAN, J.  These are appeals seeking appellate review of
(1) the original judgment of divorce (No. 79-988), (2) the
judgment ordering dismissal of the plaintiff's motion for
relief from judgment (No. 79-949), and (3) the judgment
dismissing a complaint for modification filed by the plain-

tiff's brother (No. 79-846). For reasons which will unfold in the opinion, we find no error in the judgment in No. 79-988 and No. 79-949, but we reverse the judgment in No. 79-846.

There was sufficient evidence for the trial judge to find the following facts. The plaintiff (wife) and defendant (husband) were married in New York on March 3, 1971. The only child of the marriage, Sabrina, was born on September 10, 1971. The wife is a teacher in New York city and the husband is a veterinarian who practices in Massachusetts.

The husband was born in Turkey and educated there in veterinary medicine. He emigrated to the United States in 1966 where he studied English in New York and biochemistry at the University of Wisconsin and later in New York. When they met in New York in the fall of 1970, the wife, who had been thrice married, was a social worker and the husband was still a student. He received loan grants and supported himself by a variety of part-time jobs. This arrangement continued after they were married while the husband prepared to take the certification examination in veterinary medicine. Both contributed to their common living expenses.

The husband passed the examination and worked successively as a veterinarian in New York, Connecticut and in New Jersey, contributing his salary to the living expenses of the parties. When Sabrina was born in 1971, the wife was too nervous to care for her and left her with her mother until 1973.

In the fall of 1974, the husband accepted an attractive offer to work as a veterinarian in Massachusetts. He moved here in September, followed by his wife and daughter in November, 1974. At that time, they all lived together at a very modest level in a small apartment in Brookline until June, 1975. The wife ceased working outside the home in November, 1974. The husband held two veterinarian jobs, one by day and the other by night.

The marriage was unidyllic from the start. Storms always gathered around the subject of money and both par-

ties displayed their worst sides because of financial pressure. They separated in June, 1975, and in August of that year the husband opened his own veterinary clinic in Cambridge, in part at least, on money borrowed from a bank. The husband lived in a single room in Boston, but continued to support the wife and Sabrina, visiting Sabrina weekly until early 1976, when the wife no longer permitted him to see Sabrina. In March, 1976, the wife moved to New York with Sabrina without informing the husband. They lived with the wife's mother in Brooklyn, from March, 1976, until November, 1977. Despite his efforts, the husband was denied the right to see Sabrina.

An order for separate support with custody of Sabrina being awarded to the wife and visitation rights for the husband was entered against the husband on July 6, 1976. The husband fulfilled his support obligation until he was denied the right to see Sabrina. The wife filed a complaint for divorce on August 25, 1976, seeking custody of Sabrina and an allowance for support of herself and Sabrina. In March, 1977, the husband filed a complaint for contempt against the wife for failure to permit him to visit Sabrina. The court adjudged the wife in contempt on June 13, 1977, for refusing to permit the husband to visit Sabrina. In spite of the fact that the support order was ultimately reinstated on condition that the wife permit visitation, she continued to refuse to allow him to see Sabrina.

In November, 1977, the wife left the child with her mother in Brooklyn and moved to a one-room apartment in New York city. In December, 1977, the husband filed another complaint for contempt based on the wife's persistent refusal to permit visitation. This complaint was met in January, 1978, by a cross complaint by the wife for nonpayment of support.

Following a trial on the wife's complaint for divorce, on September 26, 1978, a judgment of divorce was entered in which the husband was awarded custody of Sabrina, the wife was given visitation rights and the husband was ordered to pay alimony in the amount of $200 per month

until November 1, 1979, at which time such payments would cease. The husband was also ordered to pay arrears on his support order in the sum of $5,500.

The wife commenced an action in New York on October 31, 1978, seeking custody of Sabrina. The husband countered with a cross motion seeking return of the child pursuant to the Massachusetts judgment. The wife was adjudged in contempt on April 21, 1979, in New York for refusing to yield custody of Sabrina to the husband.

1. *Judgment of Divorce.*

a. *Property and support.* In her complaint for divorce, the wife sought custody and an allowance for support of herself and Sabrina. Curiously, she did not seek a division of property in her complaint. However, consistent with his obligation under G. L. c. 208, § 34, the trial judge made detailed findings on each item in the statutory collocation. See *Bianco* v. *Bianco,* 371 Mass. 420, 422-423 (1976). The trial judge has broad discretion in awarding alimony after he has considered all the statutory factors. See *Rice* v. *Rice,* 372 Mass. 398, 401 (1977). In this instance, the judge did not abuse his discretion. Contrast *Meghreblian* v. *Meghreblian,* 9 Mass. App. Ct. 889 (1980).

b. *Custody.* The wife claims to be aggrieved by the judge's award of custody of Sabrina to the husband. The overriding concern of the court must be the best interests of the child. *Hersey* v. *Hersey,* 271 Mass. 545, 555 (1930). *Jenkins* v. *Jenkins,* 304 Mass. 248, 250 (1939). A proceeding for custody is not designed to reward one parent and punish the other. *Hersey, supra.*

The judge predicated the award of custody to the husband on factors which are highly significant for the welfare of Sabrina. The child had not lived with her mother for a considerable period of time. The grandmother with whom Sabrina had been living was 77 years of age at the time of the trial, in poor health, living in an unsafe neighborhood whose public school was decadent. The grandmother "yelled and screamed during the trial at witnesses, became very emotional, and despite repeated warnings by the court, had to be physically removed several times."

The wife lived in a one-room apartment in Manhattan. She was highly emotional and unstable. During a recess in the proceedings below, she twice spat in her husband's face, calling him obscene names in the presence of Sabrina. While her husband was sending money to support Sabrina, she kept it for herself and did not use it for Sabrina's support.

The husband had displayed a volatile temperament in the past, but, on balance, he was relatively calm and rational. He lived in a home in a safe, quiet residential area of greater Boston. This home which he owned provided a separate bedroom for Sabrina. He retained a full-time, qualified housekeeper who lives in the home. He made application to two private schools. The child loves her father.

The judge's conclusions are amply supported by his findings and his findings are founded on the evidence. We shall not disturb this judgment.

2. *Judgment Ordering Dismissal of the Wife's Motion for Relief from Judgment.*

The wife filed a motion for relief from judgment pursuant to Mass.R.Dom.Rel.P. 60(b) (1975). The motion alleged perjury and attempted subornation by the husband and the existence of reports favorable to the wife by two psychiatrists. She also averred a change in her life style and the fact that Sabrina had lived with her in a suitable apartment in Manhattan for a year. The judge denied the motion after examining the affidavits and listening to arguments of counsel. There was no error. The court was not required to grant an evidentiary hearing. See *Prostrollo* v. *University of S. D.*, 63 F.R.D. 9 (D.S.D. 1974). This species of motion is addressed to the judge's discretion. *Trustees of Stigmatine Fathers, Inc.* v. *Secretary of Admin. & Fin.*, 369 Mass. 562, 565 (1976). There has been no abuse of discretion in this case. See *Forte* v. *Muzi Motors, Inc.*, 5 Mass. App. Ct. 700, 705 (1977).

3. *Judgment on Complaint for Modification.*

A complaint for modification of the custody award was filed by the wife's brother on behalf of Sabrina on March 23, 1979, under the authority of G. L. c. 208, § 28, seeking

restoration of custody to the wife. He alleged a number of changes in circumstances of the parties which could affect the award of custody to the husband. Among the changes alleged were medical and psychiatric reports on the child and mother not available to the court at the time of the custody award, the fact that the child had resumed living with the wife and the return of the wife to full-time employment. The husband responded to the merits of the complaint and also pleaded the complaint's legal inadequacy in failing to state a claim upon which relief might be granted. Mass.R.Dom.Rel.P. 12(b)(6) (1975). The judge dismissed the complaint on the latter ground. This was error. Before such a motion (formerly denominated a demurrer) can be allowed, it must appear with certainty that the pleader is entitled to no relief under any combination of facts which could be proved in support of his claim. See *Conley* v. *Gibson,* 355 U.S. 41, 45-46 (1957); *Romano* v. *Sacknoff,* 4 Mass. App. Ct. 862, 862-863 (1976).

The gravamen of the complaint is "changed circumstances." Facts were set forth alleging these changes. "To warrant the transfer of custody from one parent to the other, following a determination of custody in a divorce proceeding, there must be a significant change in circumstances; . . . and that change must be of sufficient magnitude to satisfy the governing principle by which the court must be guided in these cases, namely, whether the transfer of custody will be conducive to the welfare of the children." *Fuller* v. *Fuller,* 2 Mass. App. Ct. 372, 376 (1974). *Haas* v. *Puchalski,* 9 Mass. App. Ct. 555, 557 (1980). The wife's brother was entitled to an opportunity to demonstrate a right to relief on the allegations pleaded in the complaint.

The judgment of divorce and the order denying the plaintiff's motion for relief from the judgment are affirmed. The judgment dismissing the complaint for modification is reversed.

*So ordered.*