Genoveva POYSER, Administratrix of the estate of Leitza Poyser, et al., Plaintiffs,

v.

UNITED STATES of America, Defendant.

CA 81–1613–T.

United States District Court, D. Massachusetts.

July 6, 1984.

James P. McCarthy, John F. Sheehan, Boston, Mass., for plaintiffs.

Gregory Flynn, Asst. U.S. Atty., Boston, Mass., for defendant.

## MEMORANDUM

TAURO, District Judge.

This is a medical malpractice action against the United States of America under the Federal Tort Claims Act (F.T.C.A.), 28 U.S.C. § 2674 (1965). Plaintiff Genoveva Poyser, administratrix of the estate of Leitza Poyser, claims that an Army physician, Dr. James Hanley, was negligent in misdiagnosing the decedent's condition and in failing to admit her to the hospital for evaluation.[1]

---

**1.** The complaint originally contained claims by four members of the decedent's family. After trial, plaintiffs waived counts three through twelve, leaving two counts brought by Mrs. Poy-ser, the decedent's mother. Count one is for the conscious pain and suffering of decedent. Count two is for wrongful death.

## I.

## FACTS

On October 24, 1979, decedent Leitza Poyser, a fifteen year-old girl, experienced severe chest pain throughout the day. At approximately six p.m., the decedent's mother, Genoveva Poyser, decided to take her daughter to the hospital. Because the decedent's step-father was a master sergeant in the United States Army, Mrs. Poyser took Leitza to Cutler Army Hospital at Fort Devens, Massachusetts.

On the way to the hospital, the decedent fainted. She regained consciousness in the hospital parking lot and was assisted to the emergency room by her mother. A nurse took the decedent's medical history, which included a recent "virus," a non-productive cough during the preceding week, radiating chest pain and fainting.

After determining that Leitza had a fever and that her pulse was 100 beats per minute,[2] the nurse performed an electrocardiogram (EKG). Then, the decedent was sent to the radiology department for a chest x-ray. No blood work was done.

Shortly after Leitza Poyser returned from radiology, Dr. Hanley entered the examining room. Hanley, a Captain in the United States Army, was a licensed physician with a specialty in internal medicine. He was not trained as an emergency room doctor. His experience in treating children with cardiac involvement was rather limited.

Dr. Hanley reviewed the medical history and the test results. The chest x-ray showed normal bony structures, a normal cardiac silhouette and a clear lung field. Decedent's EKG revealed an incomplete right bundle branch block.

Hanley also conducted a five minute examination of decedent. Leitza Poyser complained of shortness of breath and pain on deep inspiration. The examination coupled with the medical history indicated that the decedent was in respiratory distress.

After concluding the examination, Dr. Hanley diagnosed the decedent's condition as pleurodynia, an inflammation of the lining around the lung. He prescribed aspirin to reduce the inflammation and released the decedent to her mother's care. Dr. Hanley indicated that Leitza would be better in three to five days and, thus, made no definite arrangements for a return visit.

That night and the following day, the decedent's fever and chest pain continued. Mrs. Poyser gave her daughter all the aspirin she could tolerate without vomiting. Late in the evening of October 25, 1979, Leitza Poyser became delirious. At approximately 11:30 p.m., Mrs. Poyser called Cutler Army Hospital to inform them that her daughter's condition had worsened and to make arrangements to return to the hospital.

When the Poysers arrived at the hospital, staff members tried, unsuccessfully, to take decedent's blood pressure and to draw a blood sample. Thereafter, the decedent was removed to a treatment room where she had a seizure. After attempted resuscitations failed, Leitza Poyser was pronounced dead. An autopsy indicated that the cause of death was diffuse myocarditis and associated conditions.

## II.

## THE LAW

 Because Dr. Hanley's allegedly negligent act or omission occurred in Massachusetts, this action is governed by Massachusetts law. *See* 28 U.S.C. § 1346(b) (1965); *Zabala Clemente v. United States*, 567 F.2d 1140, 1143 (1st Cir.1977). Under the law of the Commonwealth, plaintiff has the burden of showing that Dr. Hanley owed the deceased a duty of care, that he breached this duty, and that the breach caused the decedent's conscious pain and suffering and subsequent death. *See Berardi v. Menicks*, 340 Mass. 396, 399, 164 N.E.2d 544, 546 (1960).

 As a specialist in internal medicine, Dr. Hanley owed Leitza Poyser the duty to

**2.** This pulse rate is the lower cut off for an abnormal pulse or tachycardia.

exercise "the care and skill of the average member of the profession practicing the specialty, taking into account the advances in the profession." *Brune v. Belinkoff,* 354 Mass. 102, 109, 235 N.E.2d 793, 798 (1968). Defendant's assertion that Dr. Hanley's duty was to use "the care and skill of an ordinary practitioner in the community where he practiced ...," *Carey v. Mercer,* 239 Mass. 599, 601, 132 N.E. 353, 354 (1921), is incorrect. The Supreme Judicial Court abandoned the so-called "locality rule" in 1968. *See Brune,* 354 Mass. at 109, 235 N.E.2d at 798.

## III.

### LIABILITY

■ Dr. Hanley breached his duty of care by misdiagnosing the decedent's condition as pleurodynia and by failing to hospitalize her for observation and monitoring.[3] Dr. Kramer unequivocally testified that Leitza Poyser's constellation of symptoms indicated the presence of a cardiac disorder. The symptoms noted by Dr. Kramer included fainting, fever, chest pain, elevated pulse, shortness of breath, a non-productive cough and an EKG that was abnormal. Under all the circumstances and given the probability of cardiac involvement, Dr. Kramer testified, and this court finds, that good medical practice required a period of hospitalization for monitoring.

Dr. Hanley's own testimony provides additional support for this conclusion. He admitted in his deposition that fainting, shortness of breath, fever and an incomplete right bundle branch block were all indicative of cardiac involvement. The doctor, moreover, was unable to provide a consistent explanation for his decision not to admit the decedent to the hospital on October 24, 1979. In answers to interrogatories, defendant stated that "the basis for not admitting was the absence of respiratory distress." (Tr. 3–83).[4] Later, Dr. Hanley admitted that the decedent had the symptoms of respiratory distress.

■ There remains the question of causation. Under Massachusetts law:

The plaintiff [is] not required to show the exact cause of the injuries or to exclude all possibility that they resulted without fault on the part of the defendant. It [is] enough that the harm ... was more likely due to the negligence of the defendant than to some other cause for which he was not liable.

*Miles v. Edward O. Tabor, M.D., Inc.,* 387 Mass. 783, 787, 443 N.E.2d 1302, 1305 (1982) (citations omitted). Dr. Kramer's testimony established that if decedent had been hospitalized, her prognosis would have been very good. Her chance of recovery would have been in excess of seventy-five percent. In addition, the treatment for plaintiff's condition would have reduced her suffering.[5]

In summary, Dr. Hanley breached his duty to the decedent and the breach, more likely than not, was the cause of the conscious suffering and death of Leitza Poyser.

## IV.

### DAMAGES

In a wrongful death action under the F.T.C.A., a plaintiff who succeeds in prov-

---

**3.** Dr. Hanley ruled out a cardiac condition, pericarditis, after noting that the decedent's chest pain did not change when she drank water or changed position. Plaintiff's expert, Dr. Kramer, stated that he was aware of no test for pericarditis that involved merely drinking water.

**4.** All references to the transcript will be designated "Tr."

**5.** Both parties offered expert testimony on the questions of negligence and causation. In assessing the often conflicting testimony of these experts, the court has given careful considera-

tion to the witnesses' familiarity with the facts of this case and to their demeanor in court. In all areas of material conflict, this court finds the testimony of plaintiff's expert, Dr. Kramer, more persuasive than that of defendant's expert, Dr. Ryan.

On cross-examination it was revealed that Dr. Ryan is the cousin of defendant's counsel, Mr. Flynn. The court is satisfied that Mr. Flynn's failure to notify the court of his relationship to his expert witness was inadvertent. The circumstance of the relationship had no bearing on the court's assessment of credibility.

ing a claim of negligence is entitled to recover damages as provided in the Massachusetts Wrongful Death Act, Mass.Gen. Laws Ann. ch. 229 (1979), except that punitive damages may not be assessed. *See* 28 U.S.C. § 2674; *cf. D'Ambra v. United States*, 481 F.2d 14 (1st Cir.1973) (Rhode Island wrongful death statute not applied in F.T.C.A. action because it calls for punitive damages). The Massachusetts statute allows a decedent's next of kin to recover:

> (1) the fair monetary value of the decedent ... including but not limited to compensation for the loss of reasonably expected net income, services, protection, care, assistance, society, companionship, comfort, guidance, counsel and advice to the person entitled to the damages recovered; (2) the reasonable funeral and burial expenses of the decedent....

Mass.Gen.Laws Ann. ch. 229 § 2. In addition, the decedent's estate can recover for conscious pain and suffering. *See id.* at § 6.

 Initially, there is a question as to which members of the Poyser family are entitled to damages as "next of kin" under chapter 229 § 1(4). Defendant argues that only the decedent's mother is entitled to recover because "next of kin" is limited to the decedent's closest blood relative as defined by the Commonwealth's intestacy law. Although the Supreme Judicial Court has never addressed this question, this court accepts defendant's contention.

Recently, the Massachusetts Appeals Court recognized that wrongful death statutes including the phrase "next of kin" usually refer to and incorporate the state's intestacy law to establish a class of "presumptive takers" under the wrongful death statute. *See Guy v. Johnson*, 15 Mass. App. 757, 762, 448 N.E.2d 1142, 1145 (1983). Under Massachusetts law, if an intestate dies leaving a mother and two half brothers, only the mother will take from the estate. *See* Mass.Gen.Laws Ann. ch. 190 § 3 (1958). By using the phrase "next of kin" in the Wrongful Death Act, it appears that the state legislature intended to carry over this limitation on the persons entitled to recover. *See Means v. City of Chicago*, 535 F.Supp. 455, 465 (N.D.Ill.1982). Only Mrs. Poyser, therefore, is entitled to recover.

 With respect to damages under chapter 229 § 2, the plaintiff's evidence concentrated on the value of lost services and assistance and on the value of lost society, companionship and comfort.[6] Plaintiff proved that Leitza Poyser spent considerable time caring for her younger siblings. Assuming that the decedent would have lived at home for approximately three more years, the courts finds these services to be worth $15,000. In addition, both Mr. and Mrs. Poyser testified to the unique and loving relationship between Mrs. Poyser and her only daughter. Based on this testimony and the age of the decedent, *see D'Ambra v. United States*, 481 F.2d at 21, this court finds the value of lost society, companionship and comfort to be $500,000.[7]

 Plaintiff also offered evidence concerning the decedent's pain and suffering from the time of her first visit to the hospital on October 24, 1979, until her death. The decedent was in intense pain throughout the entire period. She suffered a fever, vomiting and spells of delirium. To compensate for this suffering the court awards $50,000.

The total damage award, therefore, is $565,000.

An order will ISSUE.

---

6. It is not surprising that plaintiff failed to introduce evidence of lost earnings. The First Circuit has recognized that in cases involving children such evidence is rarely available. *See D'Ambra v. United States*, 481 F.2d at 19.

7. With regard to the other elements of damages outlined in chapter 229 § 2, plaintiff failed to offer evidence that would support an award of damages.