EARL O'NEILL, administrator, *vs.* PETER MENCHER & another.[1]

Middlesex.   October 8, 1985. — February 14, 1986.

Present: GRANT, KAPLAN, & DREBEN, JJ.

*Governmental Immunity. Negligence,* Governmental immunity, Public officer, State hospital. *Public Officer. State Hospital. Wrongful Death.*

Under the law in effect prior to the adoption of the Massachusetts Tort Claims Act, two staff psychiatrists at a State hospital and their supervisor were public officers for the purpose of determining their liability in tort on claims arising from the suicide of a patient in the hospital. [612-614]

Under the law in effect prior to the adoption of the Massachusetts Tort Claims Act, two staff psychiatrists at a State hospital and their supervisor were immune from liability on a claim for conscious pain and suffering arising from the suicide of a patient in the hospital and based on a theory of negligent nonfeasance. [614-615]

Under the law in effect prior to the adoption of the Massachusetts Tort Claims Act, two staff psychiatrists at a State hospital and their supervisor were immune from liability on a claim for wrongful death arising from the suicide of a patient in the hospital and based on a theory of negligent nonfeasance. [615-618]

CIVIL ACTION commenced in the Superior Court Department on July 9, 1980.

The case was tried before *Samuel M. Flaksman,* J., sitting under statutory authority.

*Christopher H. Worthington,* Assistant Attorney General (*John F. Finnerty* with him) for Peter Mencher.

*Donald M. Lubin* for the plaintiff.

*David M. Gould* for I. Alan Annis.

DREBEN, J. On August 5, 1977,[2] a seventeen year old psychiatric patient, while unsupervised in a shower at Metropolitan

---

[1] I. Alan Annis.

[2] The Massachusetts Tort Claims Act, G. L. c. 258, §§ 1 et seq., applies to cases arising on or after August 16, 1977, eleven days after the accident in question. St. 1978, c. 512, § 16.

State Hospital, hanged himself with a bed sheet. He died the next day. Earl O'Neill, the decedent's father and the administrator of his estate, brought this action in negligence against two staff psychiatrists and their unit supervisor[3] seeking damages for conscious pain and suffering by the decedent and also for his wrongful death. See G. L. c. 229, § 2.

After a trial, a jury upon special questions found all three physicians negligent but that only the negligence of one of them, Dr. Peter Mencher, was causally related to the decedent's death. The jury awarded the plaintiff sums totaling $550,000 for wrongful death[4] (see G. L. c. 229, §§ 1 & 2) and $50,000 for pain and suffering.

The defendant Mencher appeals, claiming that his motions for a directed verdict and for judgment notwithstanding the verdict should have been allowed,[5] primarily on the ground that, as a public official, he is not liable for the actions which were found negligent by the jury. Whether his motions were rightly denied depends on whether the psychiatrists were considered to be public officers under the law in effect prior to the Massachusetts Tort Claims Act, G. L. c. 258, §§ 1 et seq., as appearing in St. 1978, c. 512, § 15.[6] Such officers were

---

[3] The superintendent of the hospital was originally also named as a defendant, but the counts against him were dismissed prior to trial.

[4] The original verdict included sums to compensate the father of the decedent, his brother, and his sister. The amount for the sister ($25,000) was subsequently struck by the judge on the defendant's motion for judgment notwithstanding the verdict. Although the plaintiff filed a cross appeal from the striking of this sum, he did not argue the issue in his brief, and we do not consider it. See Mass.R.A.P. 16(a) (4), as amended, 367 Mass. 921 (1975). We also do not consider whether the decedent's brother and sister, as well as his father, may recover under c. 229, §§ 1 & 2. See *Poyser* v. *United States,* 602 F. Supp. 436, 440 (D. Mass. 1984).

[5] Also before us is the plaintiff's appeal from the denial of his motion for a new trial as to the unit supervisor, Dr. I. Alan Annis, and an appeal by the supervisor from the denial of his motions for a directed verdict. We need not discuss these appeals separately as they involve the same issues as are involved in Dr. Mencher's appeal. The other staff psychiatrist is not involved in the appeal of this case.

[6] *Vaughan* v. *Commonwealth,* 377 Mass. 914, 915 (1979), and *Green* v. *Commonwealth,* 13 Mass. App. Ct. 524, 529 (1982), make clear that prior law is not to be modified to create additional exceptions to the immunity doctrine in view of the comprehensive statute now in effect.

subject to a limited degree of liability for negligence. See generally *Whitney* v. *Worcester,* 373 Mass. 208, 220-221 (1977).

1. *The defendants as public officers.* The most comprehensive discussion of prior law appears in *Whitney,* which explains one of the main premises underlying governmental immunity for acts of public officials. "[S]uch activities which often involve a high degree of discretion and judgment, should be insulated from a form of review which might impede governmental operations by subjecting governmental decision making to after-the-fact judicial tort analysis." *Id.* at 217. To achieve this purpose, not only the sovereign, but public officers too, are shielded from liability for their discretionary acts. Unlike the sovereign, however, public officers are subjected to liability "when they have engaged in overt and actively tortious conduct in ministerial matters." *Id.* at 220.

The scope of discretionary activities for which there was no liability for negligence swept broadly,[7] and the term public officer covered a wide range of persons.[8] Thus, the common law did not restrict "public officer" to officers of high rank. See *Gildea* v. *Ellershaw,* 363 Mass. 800, 817 (1973). Rather, in order to aid in the effective functioning of government, matters committed to the control or supervision of lesser officials were also protected against damage suits. *Ibid.* Municipal school committee members, municipal superintendents of streets, municipal tree wardens, and members of local boards of health were all classified as public officials. *Whitney,* 373 Mass. at 214 n.7. School teachers, too, were considered to

---

[7] "[F]ar too broadly," said the *Whitney* court, which indicated that prior law maintained "the immunity in large areas in which the imposition of tort liability could in no way hinder the effective operation of governmental processes." *Id.* at 217.

[8] The leading case in this area, *Attorney Gen.* v. *Tillinghast,* 203 Mass. 539, 543 (1909), does not speak directly in terms of discretion, but we think that such is the force of its language. "The holder of an office must have entrusted to him some portion of the sovereign authority of the State. His duties must not be merely clerical, or those only of an agent or servant, but must be performed in the execution or administration of the law, in the exercise of power and authority bestowed by the law."

fall in this category. Thus, in *Whitney,* a classroom teacher, as well as school committee members and an assistant principal, were said to "function as public officers." *Id.* at 222. See also *Fulgoni* v. *Johnston,* 302 Mass. 421, 423 (1939); *Desmarais* v. *Wachusett Regional Sch. Dist.,* 360 Mass. 591, 593 (1971), cert. denied, 414 U.S. 859 (1973).

On the basis of these decisions, we conclude that the staff psychiatrists in the present case and their unit supervisor were public officers. If the purpose of immunity was to ensure "diligent and creative performance of public duties," *Whitney, supra* at 221, we would be hard put to distinguish between the range of discretion accorded a staff psychiatrist in a State hospital and a teacher in a public school, so as to immunize the teacher but not the psychiatrist.

We are also persuaded that the case of *Beaumont* v. *Segal,* 362 Mass. 30, 33 (1972), supports this conclusion. In referring to personnel at Westborough State Hospital, the court said: "The superintendent and the two staff psychiatrists are public officers (see *Attorney Gen.* v. *Tillinghast,* 203 Mass. 539, 543-545 [1907]) as shown by their description in the opening . . . ." Although the reference to the plaintiff's "opening" renders the decision somewhat ambiguous, the report of the trial judge in *Beaumont* contained in the record of that case confirms our reading.[9] See *Nantucket Conservation Foundation, Inc.* v. *Russell Management, Inc.,* 2 Mass. App. Ct. 868, 868-869 (1974) (court may take judicial notice of the record of a case).

2. *Liability of public officers at common law for negligence.* The defendants as public officers are governed by the rules of

---

[9] The trial judge in this case rejected the defendants' contention that their status was settled by the *Beaumont* case, saying: "The defendants in the *Beaumont* case, however, were not deemed public officers by virtue of their status as staff psychiatrists, but on the basis of 'their description in the plaintiff's opening,' the contents of which are not reported." The published opinion of the Supreme Judicial Court, however, states that the report of the trial judge contains the complete opening statement. *Beaumont* v. *Segal,* 362 Mass. at 31. The report, which we have examined, reveals nothing further than the fact that one of the staff psychiatrists was a director of psychiatry and the other a ward psychiatrist.

personal liability of public officers alluded to earlier and set forth in *Whitney*, 373 Mass. at 220. For *nonministerial* acts, a public officer "is not liable for negligence or other error in the making of that decision" if made in good faith. In *ministerial* matters, public officers are liable only for misfeasance, and not for nonfeasance, that is, they are only liable for "overt and actively tortious conduct." *Id*. at 220.

In considering the count claiming conscious pain and suffering, we need not be concerned whether the actions of the doctors were ministerial or discretionary. Under either classification the psychiatrists would be immune from liability. The theory of negligence on which the plaintiff proceeded was that the defendants "inadequately and improperly supervised the decedent during his admission at Metropolitan State Hospital although [they] knew of the decedent's suicidal tendencies" and that they also "inadequately and improperly instructed staff members at [the hospital] in the care and supervision of the decedent . . . ." In sum, they were charged with failing to recognize, in setting a plan of treatment for the decedent, that he was suicidal. This failure, even if ministerial, would not be considered misfeasance under Massachusetts decisions but only nonfeasance. Allowing the decedent to take a shower without supervision is analogous to the teacher's order to the student "to proceed to recess" in *Whitney,* 373 Mass. at 223,[10] and to the teacher's order to perform chemical experiments without wearing safety glasses in *Desmarais* v. *Wachusett Regional Sch. Dist.,* 360 Mass. at 593. These actions were held to be mere nonfeasance and not misfeasance.

The unit supervisor, Dr. Annis, would not be liable for an additional reason — the doctrine of respondeat superior is

---

[10] In *Whitney* it was alleged that the plaintiff, a six year old who was totally blind in one eye and had limited vision in the other, was blinded as a result of being struck by a defective door at school, that although the teacher was advised that the child was "suffering from hemorrhaging of his sighted eye which further impaired his vision, [the child] was directed to proceed to afternoon recess in the school yard, which required passing through school corridors, down stairs, and out the allegedly defective door without any supervision or assistance . . . ." *Id*. at 221-222.

inapplicable to public officers. *Trum* v. *Paxton,* 329 Mass. 434, 438 (1952). *Alves* v. *Hayes,* 381 Mass. 57, 58 (1980). See also *Whitney,* 373 Mass. at 214 & n.7, and cases cited. In summary, on the common law counts for conscious suffering, each of the defendants was entitled to a directed verdict.

3. *Liability of public officers for wrongful death under G. L. c. 229, § 2.* The counts for wrongful death, the plaintiff claims, stand on a different footing. The action is governed by statute, not common law, and the statute imposes liability on a person who "by his negligence causes the death of a person . . . ." G. L. c. 229, § 2, as appearing in St. 1973, c. 699, § 1. Moreover, he urges, the court in *Somers* v. *Osterheld,* 335 Mass. 24, 26 (1956), specifically rejected application of the misfeasance/nonfeasance distinction for ministerial actions under the wrongful death statute. In such cases, "the measure of liability is ordinary negligence irrespective of the test of common law liability." *Ibid.*

Despite the language in *Somers,* we think the reasoning applicable to the common law count also precludes recovery for the wrongful death claim. We reach this result for a number of reasons.

(a) *Discretionary action.* First, we note that the demurrers of one of the defendants in *Somers* were sustained on the ground that his acts were discretionary and not ministerial. *Id.* at 27.[11] It thus appears that the *Somers* court construed the wrongful death act which was then in force as abolishing the misfeasance/nonfeasance distinction but not the other common law rule that public officers are not liable for negligence in matters involving discretion.

---

[11] That this was the basis of the decision is indicated by the authorities cited: "*Benjamin* v. *Wheeler,* 8 Gray, 409, 413 [1857]. *Denniston* v. *Clark,* 125 Mass. 216, 219 [1878]. *Barry* v. *Smith,* 191 Mass. 78, 88 [1906]. *Jaffarian* v. *Murphy,* 280 Mass. 402, 405 [1932]. Prosser, Torts (2d ed. [1955]) page 781."

The reference to *Barry* v. *Smith* particularly makes this clear as the court in that case stated at 88: "The distinction is the distinction laid down in *Child* v. *Boston,* 4 Allen, 41, between the exercise by a highway surveyor of the discretion put upon him by law as to what ought to be done, (acts which are *quasi* judicial or legislative in character,) and acts done by the surveyor in carrying into effect what in his discretion he had decided ought to be done (ministerial acts done in carrying out a plan adopted in the first capacity)."

The allegedly negligent acts of the defendants in this case are almost indentical to the acts held to be discretionary in *Somers*. There it was claimed that Osterheld, the superintendent of the hospital, had "treated" the patient, that the patient was put "in a building without restraint and was allowed access to a recreation area which was unenclosed," that he showed a "tendency to climb fire escapes and structures and to separate himself from his fellow patients, a tendency which was made known to this defendant," that the patient was allowed to return to this area "where no restraint was placed upon him or upon others, and he was permitted to come and go and run about without surveillance and without the presence of attendants," and because of this "poorly conceived" method of training and handling, the patient "disappeared and was lost and unaccounted for and died . . . ." *Id.* at 26-27. The substance of the count, the court explained, was that the defendant in the exercise of discretion "established a method or policy . . . which accorded [the patient] a greater freedom of movement and action than he should have had and as a result led to his disappearance and death. For this, there would be no liability to the plaintiff." *Id.* at 27.

While such actions probably would not be now deemed "a discretionary function" under G. L. c. 258, § 10(*b*) (as appearing in St. 1978, c. 512, § 15), see *Kelley* v. *Rossi,* 395 Mass. 659, 665 n.6 (1985), the field of discretionary action was wider under prior law. See n.7 and related text, *supra.* It is true that in *Somers* the superintendent of the hospital, and not a staff psychiatrist, was the defendant. The alleged negligence, however, was, as indicated earlier, strikingly similar to the claim made here. The setting of an improper plan, rather than actions while in the defendant's "personal charge," was the basis of the claim in *Somers,* 335 Mass. at 27-28.

It should also be noted that the *Somers* court sustained a demurrer filed by an additional defendant who was only an agent of the superintendent and not a public officer in her own right. She was held not liable, the court saying that the allegations as to her were "substantial repetitions" of the claims against the superintendent. The court held that no cause of action based on negligence was alleged. *Id.* at 28.

(b) *Evolution of wrongful death action since the time of Somers*. Although *Somers* is precedent for considering the psychiatrists' actions discretionary and hence not actionable if taken in good faith, we do not base our decision on that characterization alone. Even if the actions of the physicians were to be considered ministerial, we do not think the *Somers* dictum which eliminates the nonfeasance/misfeasance distinction for ministerial matters in wrongful death actions has continued validity. Changes in the wrongful death statute, the evolution of the right to recover for wrongful death into one at common law, as well as the absence of any subsequent authority supporting the *Somers* suggestion, lead us to this result.

The rule which subjected public officers to liability for engaging in "overt and actively tortious conduct in ministerial matters effectively place[d] a ceiling on their personal exposure in the performance of vital governmental functions." *Whitney,* 373 Mass. at 220-221. The wrongful death statute in force at the time of *Somers* had a similar effect. That statute, G. L. c. 229, § 2C, as amended by St. 1951, c. 250, was punitive, with damages to be determined by the "degree of . . . culpability" of the wrongdoer, and also provided a maximum liability of $20,000. Now (and at the time of the incident) the statute (G. L. c. 229, § 2) is compensatory[12] and has no ceiling[13] on the amount which may be recovered.

Equally, and perhaps more important, the basis of liability for wrongful death has changed since *Somers*. Then the right to recover for wrongful death was deemed to be solely a creature of statute. In *Gaudette* v. *Webb,* 362 Mass. 60, 71 (1972), however, the Supreme Judicial Court explained that the law had evolved so that "it may now be held that the right to recovery for wrongful death is of common law origin" and

---

[12] "The fundamental change in our statute from punishment to compensation fully justifies reconsideration of judge-made rules fashioned under our former punitive statute . . . ." *Mone* v. *Greyhound Lines, Inc.,* 368 Mass. 354, 361, 363-364 (1975), Braucher, J., dissenting (with whom Kaplan and Wilkins, JJ., joined).

[13] It should be noted that under the Massachusetts Tort Claims Act, G. L. c. 258, § 2, recovery is limited to $100,000. See generally *Gallant* v. *Worcester,* 383 Mass. 707, 712-715 (1981).

that "wrongful death statutes will no longer be regarded as 'creating the right' to recovery for wrongful death."

This fundamental change in outlook as to the nature of the cause of action for death, coupled with the significant changes in the statute itself, leads us to conclude that the weight of the *Somers* dictum is not sufficient to deny public officers in wrongful death actions the protections accorded them under common law. We are also influenced by the fact that no case has been cited to us — and we have found none — subsequent to *Somers* which applies the distinctions there suggested.[14] We hold, therefore, that the defendants as public officers were not liable for their actions under the law in force on August 5, 1977.

The judgment against the defendant Mencher is reversed and a new judgment is to enter in his favor. A directed verdict in favor of the defendant Annis should have been entered. The judgment in his favor is affirmed. The order denying the motion for a new trial with regard to the defendant Annis is affirmed.

*So ordered.*

---

[14] We also note that when the charitable immunity doctrine was still in full force, the Supreme Judicial Court held that the policy reasons denying recovery for common law actions applied also to preclude actions under the wrongful death statute. *Roosen* v. *Peter Bent Brigham Hosp.*, 235 Mass. 66, 75-76 (1920).