MATHEW NORMAN & others[1] *vs.* MASSACHUSETTS
BAY TRANSPORTATION AUTHORITY & another.[2]

Middlesex. February 2, 1988. — October 11, 1988.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Practice, Civil*, Motion to dismiss. *Negligence*, Causing loss of consortium.
*Actionable Tort. Parent and Child*, Companionship and society, Consortium.

A parent may not recover damages for the loss of a child's companionship
and society (consortium) due to injuries negligently inflicted on the child
by a third party. [304-308] LIACOS, J., with whom WILKINS & ABRAMS,
JJ., joined, dissenting.

Dismissal of a claim by parents, seeking to recover in a negligence action
their contribution to the payment of their adult child's medical expenses,
was required where the child was seeking the same expenses and, assum-
ing the defendants' liability, was entitled to recover them. [308]

CIVIL ACTION commenced in the Superior Court Department
on July 15, 1985.

A motion to dismiss was heard by *Hiller B. Zobel*, J., and
the case was reported by him to the Appeals Court. The Su-
preme Judicial Court granted a request for direct review.

*Terry Philip Segal* (*Jonathan P. Feltner* with him) for Mas-
sachusetts Bay Transportation Authority.

*Phyllis Fine Menken* for the plaintiffs.

*Clifford S. Hochman*, for Clifton Wisdom & another, amici
curiae, submitted a brief.

O'CONNOR, J. The principal question in this case is whether
a parent may recover for the loss of a child's consortium due
to injuries negligently inflicted on the child by a third party.

---

[1] Meg Manderson Norman and Paul M. Norman.

[2] Steven DeDominici.

The complaint alleges that Mathew Norman sustained severe injuries when he was struck by a Massachusetts Bay Transportation Authority (MBTA) vehicle, negligently operated by its employee, the defendant, Steven DeDominici. Mathew's asserted damages include his medical expenses. Meg Manderson Norman, Mathew's mother, and Paul M. Norman, his father, seek damages for the loss of Mathew's consortium and they, too, seek damages for his medical expenses. The defendants moved to dismiss the parents' claims, and that motion was denied. Pursuant to Mass. R. Civ. P. 64, 365 Mass. 831 (1974), the judge reported his ruling to the Appeals Court, and we granted direct appellate review. We now reverse the order denying the defendants' motion. We remand the case for the entry of an order dismissing the parents' claims and for further proceedings with respect to Mathew's claim.

In reviewing a ruling on a motion to dismiss, we accept as true the allegations of the complaint. *Manning* v. *Zuckerman*, 388 Mass. 8, 9 (1983). We must determine whether the plaintiffs would be entitled to recover on any set of facts provable under the complaint. *Flattery* v. *Gregory*, 397 Mass. 143, 146 (1986). *Bahceli* v. *Bahceli*, 10 Mass. App. Ct. 446, 451 (1980). In that connection, we observe that the complaint is silent with respect to whether Mathew was an adult or a minor, and was emancipated or unemancipated when the accident occurred. Neither fact is essential to our resolution of the consortium issue.

In *Diaz* v. *Eli Lilly & Co.,* 364 Mass. 153, 165 (1973), we recognized a right of recovery for loss of spousal consortium. We rejected the proposition that recognition of that right would logically require recognition of a similar right inhering in countless other relationships. *Id.* Our promise was to "proceed from case to case with discerning caution." *Id.* Subsequently, when we decided to allow dependent minor children to recover for the loss of a parent's consortium, we reiterated "our determination to 'proceed from case to case with discerning caution' in this field." *Ferriter* v. *Daniel O'Connell's Sons,* 381 Mass. 507, 516 (1980). Our repeated commitment to use discerning caution was prompted by an awareness that, as a matter

of sound public policy, the law cannot and should not attempt to right all wrongs. "[A]s a matter of policy, it must be recognized that tort liability cannot be extended without limit." *Feliciano* v. *Rosemar Silver Co.,* 401 Mass. 141, 142 (1987). See *Cohen* v. *McDonnell Douglas Corp.,* 389 Mass. 327, 341 (1983). The court must carefully limit the situations in which a defendant may be liable to persons indirectly affected by injuries negligently inflicted on third persons. Otherwise, society's exposure to the threat of financial ruin will be intolerable. "The problem for the law is to limit the legal consequences of wrongs to a controllable degree." *Payton* v. *Abbott Labs,* 386 Mass. 540, 551 (1982), quoting *Tobin* v. *Grossman,* 24 N.Y.2d 609, 619 (1969).

In *Diaz* and *Ferriter* we recognized that the relationship between a negligently injured person and a person seeking recovery for loss of consortium may be such that recourse for the consortium loss must be available despite the strong public interest in not expanding tort liability beyond tolerable limits. Accepting that proposition, but also accepting the proposition that the possibility of recovery cannot wisely be extended to every relationship in which a loss of consortium has been sustained, we must draw a principled, defensible line between those relationships to which a right of recovery should attach and those relationships with respect to which no such right should be recognized. "Every effort must be made to avoid arbitrary lines which 'unnecessarily produce incongruous and indefensible results.' " *Dziokonski* v. *Babineau,* 375 Mass. 555, 568 (1978), quoting *Mone* v. *Greyhound Lines, Inc.,* 368 Mass. 354, 365 (1975) (Braucher, J., dissenting).

By the very nature of marriage, spouses depend on one another's society, companionship, love and support (consortium) to a degree of intensity not normally present in other relationships. An injury to a spouse that impairs his or her ability to fulfil the other spouse's needs in that regard ordinarily is uniquely serious, identifiable and predictable. Our recognition of a right of recovery for the loss of spousal consortium in *Diaz* reflects that fact. Subsequently, in *Ferriter, supra* at 510, in concluding that a dependent minor child should be en-

titled to recovery for the loss of a parent's consortium, we characterized a minor child's interest in his parent's society as "closely analogous" to the interest of a wife in her husband's society recognized in *Diaz*. We expressed our skepticism "of any suggestion that the child's interest . . . is less intense than the wife's." In the ordinary course of things, the dependence of spouses on one another for love and support is found to the same degree in no other relationship except, perhaps, in the relationship of a minor child to his or her parents. The key to our holding in *Ferriter* was our recognition that ordinarily minor children are critically dependent on their parents for the spiritual and physical necessities of life. Thus, we concluded that the Ferriter children had "a viable claim for loss of parental society if they [could] show that they are minors dependent on [their injured father]." *Id.* at 516. We added: "This dependence must be rooted not only in economic requirements, but also in filial needs for closeness, guidance, and nurture." *Id.*

The Appeals Court's decision in *Morgan* v. *Lalumiere*, 22 Mass. App. Ct. 262, 270 (1986), is consistent with *Diaz* and *Ferriter*. In *Morgan*, the court allowed a mentally and physically disabled adult child to recover for the loss of the consortium of his mother upon whom he was "physically, emotionally, and financially" dependent. The common thread in *Diaz*, *Ferriter*, and *Morgan* was the unique and intense dependency intrinsic to the relationship of the parties.

Although parents customarily *enjoy* the consortium of their children, in the ordinary course of events a parent does not *depend* on a child's companionship, love, support, guidance, and nurture in the same way and to the same degree that a husband depends on his wife, a wife depends on her husband, or a minor or disabled adult child depends on his or her parent. Of course, it is true that such dependency may exist in a particular situation, but it is not intrinsic to the parent-child relationship as is a minor child's dependency on his or her parents and as is each spouse's dependency on the other spouse. Thus, a principled distinction can be made between the situations governed by the *Diaz*, *Ferriter*, and *Morgan* cases and the instant case. On the other hand, if a plaintiff parent is

permitted to recover in the circumstances of this case, there will be no defensible reason in the future to deny recovery to other relatives or even to friends who can establish that a defendant's conduct has adversely interfered with their relationship with the physically injured person.

Our opinions in *Stowe* v. *Heywood*, 7 Allen 118 (1863), and *Cook* v. *Bartlett*, 179 Mass. 576 (1901), both of which involved intentional torts, did not intimate that a parent should recover for the loss of a child's consortium resulting from injuries negligently inflicted on the child. In *Stowe*, we observed that a father may recover loss of consortium damages not only for the seduction of his daughter, but also "in various other actions for injuries *wilfully inflicted*" (emphasis added). *Id.* at 122. We then said, "We therefore need not now inquire whether damages for such suffering can be recovered, when it is the effect of an injury caused by negligence and carelessness only, and not by design." *Id.* at 122-123. As Justice Liacos recently stated for the court, relative to an action based on negligence, "it does not appear that damages for the parent's mental suffering or for loss of the child's society [have been] available when the gravamen of the parent's claim was physical injury to the child." *Ferriter, supra* at 512.

Not only do our decisions involving intentional torts fail in their language to support the proposition that a parent should recover for the loss of a child's consortium as a result of negligently inflicted injuries, but also sound policy suggests the appropriateness of a distinction between loss of consortium due to intentional wrongdoing and a similar loss due to negligence. Whether recovery should be permitted requires a proper balancing of the desirability of compensating injured persons with the undesirability of imposing unfair burdens on defendants. Whether the tort is intentional or negligent is a factor relevant to the equation. Society is rightly less concerned about the burden placed on an intentional wrongdoer than about the burden placed on one who has been merely negligent. In *Payton* v. *Abbott Labs*, 386 Mass. 540, 547 (1982), we recognized this truth in another context when we said: "It should be noted . . . that the retributive function of imposing tort liability is

served by allowing recovery for emotional distress, without proof of physical harm, where a defendant's conduct was either intentional or reckless. Where a defendant was only negligent, his fault is not so great as to require him to compensate the plaintiff for a purely mental disturbance."

If, as a result of the defendants' negligence, Mathew Norman had died, his parents, as next of kin, would have been entitled to recover under the wrongful death statute, G. L. c. 229, § 2, for the loss of his consortium. Does consistency require that the parents be entitled to recover for the loss of Mathew's consortium due, not to Mathew's death, but to his injuries? Does consistency require that recovery for loss of consortium be available to anyone who would have been the injured person's next of kin had the injured person died? We think not. In a wrongful death action, damages are not recoverable both for the injured person's losses and the derivative losses of others. In a wrongful death action, although the next of kin may recover for loss of consortium, no one recovers for the losses sustained by the injured deceased party. Here, the plaintiffs seek to recover for both. We conclude that the plaintiff parents cannot recover for the loss of their injured child's consortium.

In addition to their loss of consortium claim, Meg Manderson Norman and Paul M. Norman seek to recover their contribution to the payment of Mathew's medical expenses. Although the complaint is silent with respect to Mathew's age, it is undisputed that, at the time of the accident, Mathew was nineteen years old, and was therefore an adult. G. L. c. 4, § 7, Forty-eighth and Fiftieth (1986 ed.). Because Mathew seeks his medical expenses and, assuming the defendants' liability, is entitled to them, the parents' claim for the same expenses should be dismissed. This case is remanded to the Superior Court for the entry of an order dismissing the parents' claims, and for further proceedings with respect to Mathew's claims.

*So ordered.*

LIACOS, J. (dissenting, with whom Wilkins and Abrams, JJ., join). I dissent. At the outset, based on the facts alleged in this case, I would rephrase the court's statement of the issue before us as follows: The principal question in this case is whether a parent has a cause of action for the loss of an adult child's society and companionship when that child has been severely and permanently injured due to the defendant's negligence. In my view it is legally significant that the complaint not only alleges that Mathew Norman was struck by a Massachusetts Bay Transportation Authority (MBTA) vehicle, negligently operated by its employee, the defendant, Steven De-Dominici, but also that, as a result, Mathew suffered "serious injury to his brain," which has rendered him "largely incapacitated," "permanently disabled," and "totally dependent on his parents for financial, physical and emotional sustenance." [1]

The court holds today that the motion to dismiss the consortium claims of the parents should have been allowed. In reviewing a ruling on a motion to dismiss, the court must accept as true the allegations of the complaint. *Manning* v. *Zuckerman*, 388 Mass. 8, 9 (1983). The court must determine whether the plaintiffs would be entitled to recover on any set of facts provable under the complaint. *Flattery* v. *Gregory*, 397 Mass. 143, 146 (1986). *Bahceli* v. *Bahceli*, 10 Mass. App. Ct. 446, 451 (1980). The court, apparently relying on "policy" grounds, holds that parents such as these plaintiffs should not be allowed even the opportunity to prove their severe loss in a court of law. I disagree.

I need not review here the extensive common law history defining the rights of parents, spouses, and children for loss of services and society, whether caused by intention or negligence. That history was reviewed extensively in *Diaz* v. *Eli Lilly & Co.*, 364 Mass. 153, 154-161 (1973) (reviewing development of spousal rights for loss of consortium). In *Diaz* the court stated that "[spousal] consortium . . . comprised the right to society and sexual relations, and had . . . been emptied

---

[1] Although the complaint is silent as to Mathew's age, it is undisputed by the parties that he was nineteen years old at the time of the accident.

of the element of services or earning capacity." *Id.* at 161. Thus, the court concluded that either spouse has a claim for a loss of consortium shown to arise from personal injury of the other spouse, caused by negligence.[2] *Id.* at 167-168. Next, in *Ferriter* v. *Daniel O'Connell's Sons,* 381 Mass. 507, 509-517 (1980), we reviewed the common law history pertaining to a minor child's right to a claim for loss of consortium of the parent. Again, as in *Diaz,* we referred to the loss of services aspect of the right as "a technical requirement, an acknowledged fiction." *Ferriter, supra* at 511. The court recognized, in *Ferriter,* a dependent child's right to recover for loss of parental society and companionship "rooted not only in economic requirements, but also in filial needs for closeness, guidance, and nurture." *Id.* at 516.[3]

In *Ferriter,* for purposes of analogy, the court also reviewed the case law pertaining to a parent's right to recover for loss of a child's services and society, and concluded that "[t]he common law has traditionally recognized a parent's interest in freedom from tortious conduct harming his relationship with his child . . . [and] compensated parents for sentimental as well as economic injuries." *Id.* at 512. Many years earlier, in *Stowe* v. *Heywood,* 7 Allen 118, 122 (1863), this court, without deciding the issue, recognized the possibility that even where the loss of a child's services and society is caused by negligence, damages may be recovered for the "distress and anxiety of mind which the parent has sustained in being deprived of the society and comfort of the child." See *Cook* v. *Bartlett,* 179 Mass. 576, 579-580 (1901) (parent may recover for loss of child's services and for injury to feelings). Although the plaintiff-father in *Stowe* was deprived of his child's society and comfort due to the physical absence of the child (the child

---

[2] In *Diaz,* the court rejected the historical distinction between intentional and negligent injuries for purposes of recognizing spousal consortium rights, indicating that in reality the marital relationship suffers more disturbance and injury through third-party negligence than from intentional invasions. *Id.* at 159-160.

[3] In *Morgan* v. *Lalumiere,* 22 Mass. App. Ct. 262 (1986), the Appeals Court extended *Ferriter* to allow recovery to an adult disabled child.

having been enticed away from her father's home by the defendant), rather than a physical injury, the court acknowledged that a parent suffers an emotional loss and may be compensated therefor when there is interference with the normal parent-child relationship. *Cook, supra,* involved an intentional tort, but similarly recognized that damages recoverable by a parent "may include compensation for the injury to his feelings." *Id.* at 580.

Despite the court's efforts in this case to narrow the reading of our case law, a more objective reading of our prior cases reveals a process where the court gradually has broadened the common law recognition of a parent's right to recover for loss of filial consortium where the child sustains serious physical injuries as a result of the defendant's negligence. Statutory enactments also demonstrate an analogous legislative policy. Parents, as next of kin, may recover for loss of consortium after the death of a child in a wrongful death action. G. L. c. 229, § 2.[4] See G. L. c. 229, § 1(4);[5] *Poyser* v. *United States,* 602 F. Supp. 436, 440 (D. Mass. 1984). There should be a consistency between our statutory law and our case law. It would be anomalous to take the position that, if a child is severely injured, but does not die, the parents may not recover. See *Ferriter* v. *Daniel O'Connell's Sons, supra* at 515-516. The reasons for allowing the former militate in favor of the latter.

---

[4] General Laws c. 229, § 2 (1986 ed.), provides in pertinent part: "A person . . . shall be liable in damages in the amount of: (1) the fair monetary value of the decedent to the persons entitled to receive the damages recovered . . . including . . . care, assistance, society, companionship, comfort, guidance, counsel, and advice . . . ."

[5] General Laws c. 229, § 1 (4) (1986 ed.), provides recovery to the "next of kin" absent surviving wife, husband, or children. The record here indicates that the parents in this action are, under c. 229, such "next of kin." The court's argument about other "next of kin," relatives or even friends being able to recover is a red herring which ignores the careful process of case by case development of common law rights. The opinion in this case relates only to a seriously incapacitated adult child who becomes significantly dependent on his or her parents and whose dependence significantly alters the parents' life-style. What we are in disagreement about is simply the importance of protecting the relationships of the nuclear family, i.e., the father, mother, and their children.

"It is easy to see that the loss of a child through his death takes from his parents the society and companionship that is the essence of the lost relationship. But consider the magnitude of the loss of society and companionship that occurs when a normal 16-year-old is suddenly reduced to a blind, nearly deaf, partially paralyzed child with a mental age of three. The parental expectations for the continuation of the family relationship are the same in either case. That the parents still have their son to love and care for is a factor to consider in determining the extent of their loss, but does not negate the loss. They have sustained a genuine loss in the nature of the society and companionship they can anticipate receiving from their son as a consequence of his injuries.

"Perhaps the loss of companionship and society experienced by the parents of a child permanently and severely injured . . . is in some ways even greater than that suffered by parents of a deceased child. Not only has the normal family relationship been destroyed, as when a child dies, but the parent also is confronted with his loss each time he is with his child and experiences again the child's diminished capacity to give comfort, society, and companionship."

Note, The Parental Claim for Loss of Society and Companionship Resulting from the Negligent Injury of a Child: A Proposal for Arizona, 1980 Ariz. St. L.J. 909, 923.[6]

The notion of allowing loss of consortium for an injured child is neither new nor in disrepute. It has been accepted in Florida since 1926,[7] and a number of jurisdictions permit par-

---

[6] In a brief filed by amicus, a similar pending claim by parents of a daughter, now of legal age, seeks compensation for loss of consortium. In that case, the daughter is alleged to have suffered irreversible brain damage rendering her to be in a permanent vegetative state and totally dependent on her parents.

[7] *Wilkie* v. *Roberts*, 91 Fla. 1064 (1926).

ents to recover either by statute[8] or by common law.[9] See Annot., 54 A.L.R. 4th 112 (1987). These jurisdictions recognize that, in the case of a severely injured child, the quality of the parent-child relationship, as well as the parents' expectations of a normal family life, can be impaired seriously. Moreover, at least one of these jurisdictions has expressly extended the cause of action for filial consortium to cases in which the severely injured child is an adult, recognizing that parents continue to enjoy a legitimate expectation of their child's consortium beyond the age of majority "arising from the very bonds of the family." *Frank* v. *Superior Court*, 150 Ariz. 228, 233 (1986). I doubt that, in these jurisdictions, "society's exposure to the threat of financial ruin [has been] intolerable," as the court now claims. *Ante* at 305. The line the court draws is neither "principled" nor "defensible" but rather defeats the long established policy of this Commonwealth of protecting the integrity and sanctity of the family unit.

Damages for loss of consortium are allowed in this Commonwealth when familial relations are affected when a husband sues for the tortious injury to his wife, *Kelley* v. *New York, N.H. & H.R.R.*, 168 Mass. 308, 311 (1897); when a wife sues for the tortious injury to her husband, *Diaz* v. *Eli Lilly & Co.*, *supra* at 167-168; and when a child sues for the tortious injury to his or her parent, *Ferriter* v. *Daniel O'Connell's Sons*, *supra* at 516. There is no sound reason for drawing an arbitrary distinction when a parent sues for loss of consortium

---

[8] Iowa Code Rule Civ. Proc. 8 (1951 & Supp. 1986). Wash. Rev. Code § 4.24.010 (Supp. 1988). Idaho Code §§ 5-310 to 5-311 (Supp. 1988). Construing the Idaho statute, the court stated that "in every such action damages may be given as under all the circumstances of the case may be just," thus allowing recovery for the loss of a child's society and companionship. *Hayward* v. *Yost*, 72 Idaho 415, 425 (1952).

[9] *Reben* v. *Ely*, 146 Ariz. 309 (1985). *Yordon* v. *Savage*, 279 So.2d 844 (Fla. 1973). *Dymek* v. *Nyquist*, 128 Ill. App. 3d 859 (1984). *Sizemore* v. *Smock*, 155 Mich. App. 745 (1986). *Norvell* v. *Cuyahoga County Hosp.*, 11 Ohio App. 3d 70 (1983). *Hall* v. *Birchfield*, 718 S.W.2d 313 (Tex. Ct. App. 1986). *Shockley* v. *Prier*, 66 Wis.2d 394 (1975). In recognizing a cause of action for filial consortium, the courts in several of these jurisdictions have looked to their wrongful death statutes and have rejected the distinction between death and serious physical injury for purposes of allowing recovery.

for tortious injury to his or her child where the child has been severely injured and as a result has become seriously incapacitated and totally and permanently dependent on his or her parents as is alleged in the present case.[10]

In both *Diaz, supra,* and *Ferriter, supra,* we scrutinized the practical objections to enlarging recognized consortium claims — (1) possibility of a multiplicity of suits; (2) inability to define the point at which the right would cease; (3) inability of a jury adequately to cope with the question of damages, both because the damages are too speculative and because overlapping recovery is probable — and ultimately found those reasons "unsound." *Ferriter, supra* at 513-514, 516. *Diaz, supra* at 159-160. Further scrutiny is unnecessary here. None of the objections listed warrants a dismissal of this claim.

An additional objection raised by the defendants in this case, and adopted by the court, is that the absence of economic dependency of a parent on his or her child should preclude recovery. This argument also ignores the careful case by case development of the law in this Commonwealth, as well as the evolution of loss of consortium from a loss of services action to a loss of companionship action.[11]

As we indicated in *Ferriter* v. *Daniel O'Connell's Sons, supra* at 516, economic dependence is just one factor to be

---

[10] "[T]he parent-child relationship is undeniably unique and the wellspring from which other family relationships derive. It is the parent-child relationship which most deserves protection and which, in fact, has received judicial protection in the past." *Frank* v. *Superior Court,* 150 Ariz. 228, 229 n.3 (1986).

One commentator has suggested that to draw the line limiting liability for loss of consortium between actions for lost society and companionship caused by the tortious infliction of death to a parent or a child and the same type of damage caused by physical injury, or between a spouse's action for loss of consortium and a parent's or child's action for lost society and companionship, may be sufficiently irrational as to suggest a possible violation of the equal protection clause. Love, Tortious Interference with the Parent-Child Relationship: Loss of an Injured Person's Society and Companionship, 51 Ind. L.J. 590, 606-615 (1976).

[11] See Note, Torts — Parent's Recovery for Loss of Society and Companionship of Child, 80 W. Va. L. Rev. 340 (1978); Note, The Child's Right to Sue for Loss of a Parent's Love, Care and Companionship Caused by Tortious Injury to the Parent, 56 B.U.L. Rev. 722 (1976).

considered in awarding damages for loss of consortium. Moreover, it has become an increasingly less significant factor in determining consortium rights. In recent years several courts have recognized that "the pecuniary-loss test is outmoded and does not, by itself, provide a proper vehicle for assessing the damages incurred by a parent when his child has been injured." Note, Torts — Parent's Recovery for Loss of Society and Companionship of Child, 80 W.Va. L. Rev. 340, 347 (1978), and cases cited. A child today is valued not because he is a source of income, but because he is a source of emotional sustenance and joy. Note, The Child's Right to Sue for Loss of a Parent's Love, Care and Companionship Caused by Tortious Injury To The Parent, 56 B.U.L. Rev. 722, 731 (1976). "The true significance of the parents' action under modern practice is that it compensates the parents' emotional losses when their child has been injured." 56 B.U.L. Rev. at 731-732.

I acknowledge that there are differences between the way in which parents depend on their children and the way in which spouses depend on each other and children depend on their parents. However, I am not persuaded that such differences should preclude the recovery of a parent for loss of consortium of his or her child who has been seriously injured by defendant's negligent acts, especially when the severity of the injuries has resulted in the child's continued dependence on his parents and the parents' continued subordination to the needs of the child. See *Frank* v. *Superior Court*, 150 Ariz. 228, 231 (1986); *Sizemore* v. *Smock*, 155 Mich. App. 745, 750 (1986).[12] Such

---

[12] A dominant theme of our modern law of torts is that "presumptively there should be recourse for a definite injury to a legitimate interest due to a lack of the prudence or care appropriate to the occasion." *Diaz* v. *Eli Lilly & Co.*, 364 Mass. 153, 165 (1973). Like the marital interest in *Diaz*, the parental interest in this case is "quite recognizable and its impairment may be definite, serious, and enduring," even though the child is an adult. *Id.* In this context we held, in *Feinberg* v. *Diamant*, 378 Mass. 131, 134 (1979), that "a financially able divorced parent may be required to contribute to the support of an adult child who by reason of mental or physical infirmity incurs expenses that he or she is unable to meet."

a position is more "consistent with the humane policies under-lying the *Ferriter* decision," [13] than the position the court takes today.

In my view, the court should hold that Mathew's parents have viable claims for loss of filial society if they can show that Mathew's injuries are of such severity and permanence as to render him physically, emotionally, and financially depend-ent on them and that, as a result, their lives have been signifi-cantly restructured and their expectations of enjoying those experiences normally shared by parents and children have been seriously impaired. If the plaintiffs can prove such a parent-child relationship and that Mathew's negligently inflicted in-juries severely affected their relationship with him, recognition of a filial consortium right would be justified. I dissent.

---

[13] *Morgan* v. *Lalumiere,* 22 Mass. App. Ct. 262, 270 (1986).